Hillsborough,⎱
May 27, 1953.⎰ No. 4186.

MERCHANTS NATIONAL BANK *v.* DELANA B. CURTIS & a.

*McLane, Davis, Carleton & Graf* and *Wesley E. Whitney* (*Mr. Whitney* orally), for Norwin S. Bean.

*Warren, Wilson, Wiggin & Sundeen* and *Bartram C. Branch* (*Mr. Branch* orally), for Marjorie Quirin.

*Craig & Craig* and *Floyd Thorp* for Charlotte H. Marshall, George E. Hill, Jr., Janet Hill Montague, Laban W. Bond, Charlotte J. Black, and Lillian Bond Lanois.

*Charles H. Barnard* and *James A. Sayer, Jr.* (*Mr. Barnard* orally), for Kalmar Francisco Shively.

*George P. Cofran* and *Paul A. Rinden* (*Mr. Cofran* orally), for Noyes F. Bond and Rufus F. Bond.

KENISON, C. J. The question transferred in effect asks us to decide who is entitled to how much of what trust moneys. This question depends in part on whether clause sixth of the will violates the rule against perpetuities. At the threshold of the dispute, however, is the issue whether the construction of this will in the case of *In re Harrington Estate,* 97 N. H. 184, is *res judicata* of the present claim that clause sixth violates the rule against perpetuities. We consider this preliminary issue first.

The proponents of the will maintain that the Bean-Quirin interests are precluded from urging the invalidity of any part of the will under the doctrine of *res judicata* and rely on *McAllister* v. *Elliot,* 83 N. H. 225. That case is similar but distinguishable because of important factual differences. In the first *McAllister* case (*McAllister* v. *Hayes,* 76 N. H. 108) "counsel on both sides . . . made repeated references to the rule against perpetuities." 83 N. H. 225, 228. Furthermore the opinion in the second *McAllister* case states that the silence of the court relative to the rule against perpetuities " . . . is to be explained rather upon the ground that the inapplicability of the rule to any of the devises in the will was clear." 83 N. H. 225, 229. When *In re Harrington Estate,* 97 N. H. 184, was argued and decided there was no reference to the rule against perpetuities in the reserved case, the oral arguments, or the written briefs and it was not mentioned in the opinion. Bean and Quirin were not parties. The issue of the validity of clause sixth of the Harrington will with relation to the rule against perpetuities was neither litigated nor determined in the prior action and is not *res judicata* of the issue in this proceeding. *Gagnon* v. *Pronovost,* 97 N. H. 500.

The rule against perpetuities, hereinafter called the rule, prevails in this state (*Gale* v. *Gale,* 85 N. H. 358) but it has never been "remorselessly applied" as advocated by Gray in "The Rule against Perpetuities" (4th *ed.*) *s.* 629. The genesis of the modified rule in New Hampshire began in 1891 with *Edgerly* v. *Barker,* 66 N. H. 434, when a gift of a remainder interest to grandchildren reaching forty years of age, which offended the rule, was cut down to a gift to grandchildren reaching twenty-one years of age so as to not offend the rule. This decision was bitterly assailed by Gray in his treatise (appendix G) since he thought it was a dangerous

thing to tamper with this ancient English rule "which is concatenated with almost mathematical precision." Gray, *supra, s.* 871. Nevertheless, *Edgerly* v. *Barker, supra,* has been followed in subsequent decisions in this state and continues to remain in good standing here. *Wentworth* v. *Wentworth,* 77 N. H. 400; *Flanders* v. *Parker,* 80 N. H. 566; *Gale* v. *Gale, supra; Amoskeag Trust Company* v. *Haskell,* 96 N. H. 89, 91. See Quarles, The Cy Pres Doctrine: Its Application to Cases Involving the Rule against Perpetuities and Trusts for Accumulation, 21 N. Y. U. L. Q. Rev. 384 (1946). In England the same result has been achieved by legislation. Laws of Property Act, 1925, 15 Geo. V., *c.* 20, *s.* 163.

The rationale of the *Baker* case was that, wherever possible, a will should be construed to carry out the primary intent to accomplish a legal testamentary disposition even though the will may have inadvertently exposed a secondary intent to accomplish the testamentary disposition in an ineffective manner. That rationale has been applied in many recent will cases that have not involved the rule itself. "Traditionally, the courts of this jurisdiction have shown a signal regard for the intent of the testator . . . at times at the expense of other recognized principles deemed less cogent in their application. *Cf. Edgerly* v. *Barker,* 66 N. H. 434." *Petition of Wolcott,* 95 N. H. 23, 26. The same thought received expression in different language in *Burtman* v. *Butman,* 97 N. H. 254, 258: "Probably no jurisdiction has stood more steadfastly for giving effect to the intention of the testator rather than to arbitrary rules of law than New Hampshire." The refusal of this court to apply in unmodified form common law principles which defeat normal and reasonable estate plans has not been limited to wills but applies to conveyances as well. *Therrien* v. *Therrien,* 94 N. H. 66.

The rule is a technical one, difficult of application and is often enforced to frustrate testamentary intent although the policy of the rule may not require such enforcement in a particular case. It is not surprising, therefore, that there has been an increasing tendency to avoid the application of the rule by various judicial techniques. There is a constructional preference for considering interests vested rather than contingent. *Upton* v. *White,* 92 N. H. 221. "The public interest in keeping *the destructive force of the rule against perpetuities within reasonable limits* is a considerable present factor supporting the public interest in that construction which accomplishes the earlier vesting." 3 Restatement, Property, *s.* 243, *comment* i. (Emphasis supplied). If a gift is made upon al-

ternative contingencies, one of which might be remote, while the other is not, the gift is valid where the second contingency actually happens. This doctrine is used to prevent the application of the rule in many cases. Anno. 64 A. L. R. 1077. "Essentially this represents a revulsion against the rule requiring absolute certainty of vesting as viewed from the creation of the interest . . . . Courts have a strong tendency to 'wait and see' wherever possible." 6 American Law of Property (1952) s. 24.54. These techniques have the salutary effect of avoiding the punitive and technical aspects of the rule but at the same time confirming the policy and purpose of the rule within reasonable limits. *Wentworth* v. *Wentworth*, 77 N. H. 400.

Clause sixth of the will is capable of at least two possible constructions. The first construction is that clause sixth created two contingencies upon which it would take effect: one to occur, if at all, on the death of Margaret May Curtis; the other to occur, if at all, on the death of unborn grandchildren. Since the first contingency actually occurred and is within the period of perpetuities, the gift may be considered valid. A closely parallel case is *Springfield Safe Deposit & Trust Co.* v. *Ireland*, 268 Mass. 62. Under this construction the event occurs at the death of Margaret May Curtis, a life in being, and clause sixth would not be considered violative of the rule.

The second possible construction of this sixth clause is the one urged by the Bean-Quirin interests. They argue that the will gives the brothers and sisters an executory interest upon a single contingency which may occur at the death of as yet unborn grandchildren. While this is not the only construction that the clause is susceptible of, it is not a labored one. There is no doubt that, if there had been another grandchild who died after Margaret May Curtis without leaving heirs of his body, this event would have occurred beyond the period allowed by the rule against perpetuities.

Assuming this second construction to be permissible, we come to the crucial question whether we are justified in deciding the perpetuities issue on the facts which actually occurred rather than on facts that might have happened viewed as of the death of the testator. There is little case authority for deciding upon facts occurring after the testator's death in a case such as the one before us. However, recognized modern commentators present convincing arguments for doing so. Leach, Perpetuities in Perspective: End-

ing the Rule's Reign of Terror, 65 Harv. L. Rev. 721 (1952); 6 American Law of Property (1952) s. 24.10; and a full study by a Pennsylvania law revision commission resulted in a statute that permits such events to be considered. Pa. Estates Act of 1947, s. 4, Purdon, Pa. Stat. Ann. tit. 20, s. 301.4. There is no precedent in this state that compels us to close our eyes to facts occurring after the death of the testator.

In the present case we are called on to determine the validity of a clause of a will that did not in fact tie up property beyond the permissible limit of lives in being plus twenty-one years. There is no logical justification for deciding the problem as of the date of the death of the testator on facts that might have happened rather than the facts which actually happened. It is difficult to see how the public welfare is threatened by a vesting that might have been postponed beyond the period of perpetuities but actually was not. The recent decision in *Sears* v. *Coolidge* (Mass.), 108 N. E. (2d) 563, allows the court to take a "second look" under powers of appointment. While this is not direct authority for doing the same thing with a devise or bequest, it is bottomed on the same proposition that the glacial force of the rule will be avoided where the interests actually vest within the period of perpetuities. 6 American Law of Property, s. 24.35. When a decision is made at a time when the events have happened, the court should not be compelled to consider only what might have been and completely ignore what was. Analogy may be found in cases where the validity of a remainder interest is not considered until the facts existing on the death of the life tenant can be established. See *Orr* v. *Moses*, 94 N. H. 309; *Durfee Trust Co.* v. *Taylor*, 325 Mass. 201.

At the death of the survivor of the life tenants, Edward Harrington and Delana B. Curtis, both of whom were lives in being at testatrix' death, it became certain that no grandchildren of the testatrix would be born after her death. This in turn made it certain that the gift in clause sixth of the will would in fact vest at the death of Margaret May Curtis Reynolds Vreeland, also a life in being at testatrix' death. Consistent with the principles above stated, the facts existing at the death of the two life tenants are taken into consideration in applying the rule.

We therefore conclude that clause sixth does not violate the rule against perpetuities. The individuals who are entitled to participate in the distribution of the trust moneys and the extent of their interests are to be determined under this clause.

Since Almeda S. Goyscan predeceased the testatrix leaving no issue and since the testatrix' sister, Nancy Bond Corliss and her only child George died without issue before the death of Margaret, the division is to be made among the representatives in interest of five brothers and sisters of the testatrix as stated in *In re Harrington Estate,* 97 N. H. 184, 187.

The brother Jonathan is represented by two grandchildren whose interests are equal. Similarly the brother John is represented by two grandchildren whose interests are likewise equal. The interests of these representatives of the two brothers are unaffected by any conveyances. Consequently, the representatives of each brother share equally in one-fifth of the fund.

The sister Maria is survived by three grandchildren, all children of George E. Hill, who conveyed his interest in 1914, but predeceased Margaret. Similarly the brother James B. is survived by two grandchildren, both children of Arthur J., who conveyed his interest in 1914, but predeceased Margaret.

The sister Abigail is survived by three children and a granddaughter representing a deceased child all of whom conveyed their interests in 1914, the granddaughter's interest being conveyed by a guardian's deed.

While it was the common law rule that future contingent interests were not alienable (*Hayes* v. *Tabor,* 41 N. H. 521), this is not the majority rule today. 2 Restatement, Property, *s.* 162; 3 Simes, Future Interests, *s.* 714; 2 Powell, Real Property (1950), *s.* 283. More recent cases in this state indicate the growing tendency to uphold conveyances of unvested rights. *Peterborough Bank* v. *Hartshorn,* 67 N. H. 156; *Ladd* v. *Higgins,* 94 N. H. 212, 214. Accordingly it is held that the deeds given in 1914 were effective to convey whatever interests the grantors then had, which interests were contingent upon the grantors surviving Margaret. Since those who were the representatives of the sister Abigail in 1914, all survived Margaret, the interests conveyed by their deeds belonged at the time of vesting to the successors of the grantee, now the Quirin and Bean interests. These interests are entitled to one-fifth of the fund. On the other hand since the children of the sister Maria and the brother James B. who conveyed in 1914, predeceased Margaret, no interests vested in them and Quirin and Bean, the successors of the grantee, took nothing from them. The representatives of this brother and sister living at the death of Margaret take under clause sixth of the will. *Golladay* v. *Knock,*

235 Ill. 412; *Whitesides* v. *Cooper*, 115 N. C. 570; 2 Powell, Real Property (1950) *supra, pp.* 504, 505. The three representatives of Maria are each entitled to one-fifteenth of the fund and the two representatives of James B. are each entitled to one-tenth.

The Quirin and Bean one-fifth part of the fund is to be divided between them in accordance with the ancillary stipulation which they filed.

*Case discharged.*

All concurred.