Hillsborough,
No. 4748.

PETER FULLER ENTERPRISES, INC. *& a.*

*v.*

MANCHESTER SAVINGS BANK *& a.*

Argued May 6, 1959.

Decided June 2, 1959.

118

*Burns, Bryant & Hinchey (Mr. Bryant* orally), for the plaintiffs.

*McLane, Carleton, Graf, Greene & Brown* and *Robert A. Raulerson* (*Mr. Graf* orally), for the defendants.

LAMPRON, J. The principal of each note is payable by its terms in specified monthly payments beginning April 28, 1958, and ending April 28, 1963, whereupon the entire balance is to become due and payable. Each note contains the provision that "sixty (60) days default in payment of any interest or principal payment to make the entire unpaid balance due and payable." The real estate and chattel mortgages securing the performance of these notes contained as a condition the payment of the notes according to their terms.

On February 13, 1959, plaintiffs tendered to the respective payees the interest due to date and the unpaid principal of each note which was refused. They claim the tender was improperly refused and made no more payments. They further claim that by their failure to make the payments due February 28, March 28, and April 28, 1959, the maturity of the notes has been automatically accelerated.

Every negotiable instrument is payable at the time fixed therein. RSA 337:85. The mortgages the dominant feature of which is security for the performance of the primary obligations evidenced by the notes become void upon payment according to terms or by legal tender thereof. RSA 479:6; *Blaisdell* v. *Coe*, 83 N. H. 167, 168. A mortgagor, however, in the absence of a provision so providing has no right to pay in advance of maturity. *Buffum* v. *Buffum*, 11 N. H. 451, 456; *Trahant* v. *Perry*, 253 Mass. 486; 1 Glenn, Mortgages, *s.* 50, *p.* 319; 59 C. J. S. 695. Plaintiffs argue that by their failure to make the payments due as indicated above, the maturity of the notes has been automatically accelerated by their provision that "sixty (60) days default in payment of any interest or principal payment to make the entire unpaid balance due and payable."

It is stated in an annotation in 159 A. L. R. beginning at page 1077 that a majority of jurisdictions hold that such a clause is not self-operative but leaves an option to the creditor whether or not to take advantage of it and that without some action on his part the full amount will not become immediately due merely on the happening of a default. See cases cited *pp.* 1084, 1085. The rationale of these decisions is that the provision is primarily for the benefit of the creditor who should be free to decide whether

such protection is necessary under the circumstances of the default and the obligor should not be entitled to take advantage of his own wrong and cause an automatic change of maturity (*p.* 1088).

Other jurisdictions hold that under such a clause the entire principal of the note and mortgage becomes automatically due without the necessity of a declaration of the right or an election on the part of anyone. See cases cited, *id.*, 1079, 1080. The basis of these holdings is that the provision exists for the benefit of both parties and courts have no right to make a new contract different from the expressed words of the parties. *Id.*, 1082.

We have no decision in New Hampshire on this point but we are of the opinion that the better view is that such a clause should be interpreted not as self-operating but as conferring an option on the holder to accelerate the maturity and so hold for the following reasons. In many instances mortgage loans are made by lenders as an investment and the period for which they run can affect the rate of interest and other terms thereof. If an acceleration clause such as the one in this case were held to be automatic, the borrower by his own default could convert a mortgage from a five-year mortgage to a sixty-day mortgage. *Keene Five Cent Sav. Bank* v. *Reid,* 123 Fed. 221, 224; *Kleiman* v. *Kolker,* 189 Md. 647. Furthermore even though in the instant case such an interpretation is considered a hardship, in most cases if the clause were self-operating, the holder could not exercise leniency in overlooking failures to make payments when due, thus the whole loan would be brought down on the head of the debtor at once. Chafee, Acceleration Provisions in Time Paper, 32 Harv. L. Rev. 765-769.

We are of the opinion that such a clause is designed to constrain and stimulate a debtor to meet his engagements promptly and to afford the holder the right to take saving action at the first sign of what appears to him as serious trouble with his investment. Such an interpretation is also favorable to the great majority of debtors because the terms of payment are usually designed to meet their ability to pay and it would be to their benefit not to have the whole debt become due automatically upon a default. The more reasonable interpretation of such a clause in our judgment is that it confers on the holder an option to accelerate the maturity of the note at his election.

The Trial Court has found for the purposes of the motion to discharge the mortgages in advance of a hearing on the merits that plaintiffs might suffer substantial loss by their failure to obtain

these discharges at this time. The Court transferred without ruling as issue No. 1 whether or not it has authority at this stage to order a discharge of these mortgages upon the condition that plaintiffs "substitute therefor a sum of cash, to be deposited in New Hampshire banks, equal to the unpaid principal and interest to April 1963, plus a sum sufficient to offset any loss in credits against the state tax levied on savings banks' assets, or by the furnishing of any other security which the Court might order to secure the petitionees."

The plaintiffs argue in support of the Trial Court's authority that since the mortgage is merely security for the debt the Court should have authority to substitute other security for it, provided it is equivalent in value, for if the creditors' rights to payment of the debt are fully protected they may not complain.

Defendants take the position that the Trial Court has no authority to interfere with the private contractual rights voluntarily entered into by the parties. They argue that any alteration of the security arrangement by the Trial Court is a substitution of the Court's judgment for that of the mortgagees as to the adequacy of the security.

"In the nature of things obligations arising from contractual relations cannot justly and reasonably be displaced by other obligations . . . There is no law or judicial power by which considerations of equity may reform contracts which are free from legal attack on the grounds of fraud or mistake." *Lemire* v. *Haley*, 91 N. H. 357, 361, 362. The hardship which will result to the plaintiffs in this case is not one "the possibility of which was not evident at the time the agreement was executed." *Bourn* v. *Duff*, 96 N. H. 194, 198. Hardship resulting from what may prove to be an improvident bargain fairly and voluntarily assumed by contract does not entitle a party to be relieved of its undertaking in equity. *Id.*, 198, 199. *Cf. Caron* v. *Association*, 90 N. H. 560. The answer to transferred issue No. 1 is "no."

Issue No. 2 transferred without ruling is whether or not the Trial Court, after a hearing on the merits and a ruling that the instruments are valid as written and do not mature until 1963 and a finding of substantial financial loss if plaintiffs do not obtain a discharge of the mortgages, has authority to order a discharge of the mortgages, upon the same conditions set out in issue No. 1, "or by requiring said cash or other security to be paid on said notes according to their terms."

It is not the duty of this court nor do we deem it good practice to advise the parties in advance of hearing as to their rights under all possible facts which might be proved. *White M't'n &c. Co.* v. *Murphy,* 78 N. H. 398, 403. No decision holding that a court will order a discharge of a mortgage the condition of which has not been performed so as to enable the mortgagor to make a profit on an advantageous sale has been presented to us. Nor has any statutory law in our state granting such authority to the Trial Court been brought to our attention. *Cf.* RSA 511:48-50, 53. *Williams* v. *Mathewson,* 73 N. H. 242; *Perry* v. *Company,* 99 N. H. 451; *Lefebvre* v. *Waldstein,* 101 N. H. 451. Our answer to issue No. 2 is "no."

The bill in equity for reformation not having been heard on the merits the order is

*Remanded.*

All concurred.