Rockingham
No. 6765

GRANITE STATE ELECTRIC COMPANY

v.

ALBERT GIDLEY

SAME

v.

M. G. & T. INVESTMENT CORP. & a.

March 29, 1974

*Orr & Reno* and *Ronald L. Snow (Mr. Snow* orally) for the plaintiff.

*Sayer & Giordano (Mr. James A. Sayer, Jr.,* orally) for the defendants.

GRIMES, J. Defendants appeal an order that they permanently remove certain mobile homes and other located structures within eight feet of the center line of plaintiff's utility line easement which runs across defendants' property. Plaintiff brought suit with one count in case and a

second count in trespass quare clausum fregit and alleged $5,000 damages on each count. At trial, plaintiff orally waived money damages and orally requested a permanent injunction against defendants, which was granted. All questions of law raised by defendants' exceptions were reserved and transferred by *Morris, J.*

Defendants' property, located in Salem, comprises a narrow strip of land between Route 28 and the B. & M. Railroad. Running through the middle of the property, plaintiff maintains a single row of utility poles which carry three wires at least one of which has a capacity for conveying 23,000 volts of electricity. Directly beneath these lines, and sometimes next to the poles, defendants have parked mobile homes for display and storage. Some of the mobile homes have been made into permanent offices staffed by full-time employees. One of the buildings is also used as a mobile home sales office and is open to the public.

Plaintiff claims the right to have the easement free of structures through three different instruments. In 1924, title to the land in question was conveyed to Walter Foote in trust. The terms of the trust were that Minnie Foote occupy the land for her life and the remainder should pass at her death in equal shares to her then living heirs. By an instrument dated February 17, 1938, Walter Foote, acting alone and as trustee, purported to convey to plaintiff a 60-foot wide right of way which included specifically the right to keep the strip clear of trees, underbrush and structures not existing at the time of the deed. On May 4, 1938, a second instrument, identical in all respects with the February document, granted the same right of way with the same conditions to the plaintiff. This instrument, however, was signed not only by the trustee Walter Foote but also by the life tenant Minnie Foote and three contingent remaindermen, Ethel Wakefield, Waldo Wakefield, and Louise Wakefield, all of whom were potential heirs of Minnie Foote.

Minnie Foote died in 1946, survived only by her daughter, Ethel M. Spires, the former Ethel Wakefield,

who thereby took title to the property in fee. By a third instrument dated June 8, 1950, Ethel Spires again conveyed to the plaintiff a right of way across her property. Though detailing the usual right of entry and maintenance provisions, this easement, unlike the others, did not specifically include the right to have the passageway free of ground structures. Defendants, through a variety of arguments, challenge the general validity of the first two deeds and question the specific applicability of the third to their mobile homes.

Without deciding the effect of the first instrument, we will consider the second instrument which was joined in by the trustee, the life tenant and the three contingent remaindermen of the property. Defendants' primary argument against the validity of this second deed is that because the title to the premises was split between legal and equitable title holders and life tenants and remaindermen, the property could not be encumbered or conveyed by the separate interest holders absent an express grant of power in the trust.

There is no doubt that a beneficiary not under legal incapacity can ordinarily transfer part or all of his interest in a trust. *Epstein v. Corning,* 91 N.H. 474, 22 A.2d 410 (1941). The life tenant Minnie Foote's conveyance of the easement would be effective against her during her lifetime. 2 G. Thompson, Real Property § 317 (1961); 51 Am. Jur. 2d *Life Tenants and Remaindermen* § 80 (1970). The conveyance by Ethel Spires and the other contingent remaindermen was effective to convey their contingent interests and when Ethel Spires became the sole survivor of the life tenant, the fee vested in her. This inured to the benefit of the plaintiff which then acquired full title to the easement created by the second 1938 deed. *Merchant's &c. Bank v. Curtis,* 98 N.H. 225, 233, 97 A.2d 207, 213 (1953); *see Eastman v. Bank,* 87 N.H. 189, 177 A. 414 (1935). Furthermore, the deed of Ethel Spires to defendants' predecessor in title expressly made defendants' title subject to the terms of the 1938 conveyance as well as that of 1950. We hold, therefore, that regardless of the effect of the 1950

conveyance, the plaintiff's easement includes the right to keep it clear of "structures" except those existing at the time of the 1938 conveyance.

Defendants' contention that their motion to dismiss should have been granted on the basis that plaintiff's oral waiver of money damages and prayer for injunction were not effective to amend the pleadings so as to obtain equitable relief by way of injunction cannot be accepted under our liberal practice. *Metcalf v. Gilmore,* 59 N.H. 417, 47 Am. R. 217 (1879); *Fitch Company v. Company,* 82 N.H. 318, 133 A. 340 (1926); *Owen v. Weston,* 63 N.H. 599, 4 A. 801 (1885). No objection was made at trial, no continuance was requested, and no surprise or prejudice was alleged. The case has been fully tried and we see no reason to disturb the decree. *Derby v. Company,* 100 N.H. 53, 119 A.2d 335 (1955); *Fitch Company v. Company supra.*

*Exceptions overruled.*

All concurred.