Carroll
No. 7954

DENLEY W. EMERSON

v.

VICTOR R. KING & a.

October 30, 1978

*Upton, Sanders & Smith*, of Concord (*Richard F. Upton* orally), for the plaintiff.

*Sulloway, Hollis, Godfrey & Soden*, of Concord (*John C. Ransmeier* orally), for the defendants.

DOUGLAS, J.    This case was brought as a bill in equity seeking specific performance of an option to acquire real estate. The property in question is a farmer's cottage plus ten vacant acres overlooking the Sandwich range in Sandwich, New Hampshire, originally part of the plaintiff's homestead. In the fall of 1952, the plaintiff, Denley W. Emerson, was approached by Miss Marjorie Thompson and her close friend, Miss Ida Pritchett, residents of Haverford, Pennsylvania. Both women were retired and unmarried, without family, dependents, or close relatives. They informed the plaintiff that they wished to buy the farmer's cottage as a second home. The plaintiff eventually agreed to sell the house to Miss Thompson and Miss Pritchett subject to a repurchase agreement. The repurchase agreement reads:

> The grantees by the acceptance of this deed hereby covenant and agree with the grantor that in the event that they or either of them should at any time wish to sell or otherwise dispose of or convey her or their interest in the premises herein described, or in any event upon the death of the eventual survivor of them, the grantor shall have an option to repurchase said premises together with any improvements thereon, for the total purchase price of $5,000.00, to be payable within sixty days of receipt of notice of such desire to sell or dispose of such interest from the grantee or grantees or the survivor of them or in any event within sixty days of the decease of the survivor

of them, real estate taxes to be pro-rated between the parties as of the date of transfer of title, and it is understood and agreed that the word "grantor" as used in this paragraph shall include the grantor, his heirs, executors, administrators or assigns.

The documents for this sale were inspected by two attorneys, the defendant Victor R. King and an attorney engaged by the two women to act as local counsel for the purpose of this transaction. After this inspection, the deed with the repurchase clause was executed December 22, 1952, running to the buyers as joint tenants with rights of survivorship, for the purchase price of $5,000. The new owners made substantial improvements in the cottage, which had been planned prior to the conveyance of the deed.

In 1955, Miss Thompson and Miss Pritchett approached the plaintiff regarding the purchase of the field adjacent to the cottage. Control of this field protects the view of the mountains from their cottage as well as the view from the homestead owned by the plaintiff.

After a long period of consideration, the plaintiff finally agreed to sell the field for $3,000, the amount required by the mortgage bank to release the property. All parties were represented by counsel in this transaction. The deed to the field was executed October 9, 1956, running to the two buyers as joint tenants with right of survivorship. It contains repurchase provisions similar to the provision in the 1952 deed for the farmer's cottage.

Miss Pritchett died in 1965. As surviving joint tenant, Miss Thompson became sole owner of their Sandwich real estate. The assessed taxes were based on the full value of the property as if no repurchase agreement existed. As a result of these high taxes, an unsuccessful attempt was made by Miss Thompson's attorney to modify the original agreement by increasing the amount required to repurchase the property from $8,000 to a figure closer to the fair market value. The plaintiff indicated he was unwilling to modify the original agreement and the matter was dropped. When Miss Thompson died on February 25, 1975, the defendants were named coexecutors of her will. All of her real estate in Sandwich was devised to them. By letter dated April 8, 1975, the plaintiff notified the defendants of his intent to exercise the option for repurchase of both parcels of real estate at the agreed upon price, and tendered an offer of the total purchase price of $8,000. The plaintiff brought this petition for specific performance of the option agreements. The Trial Court, *King*, J., denied the plaintiff's petition, ruling that the repurchase agreements

were void as an unreasonable restraint on alienation and that enforcement of the agreement in light of the increased value of the property would work an unconscionable result. A careful review of the facts of this case and the pertinent law persuades us that the trial court mistakenly denied the plaintiff's request for specific performance. *Cf. Norris v. Clark*, 72 N.H. 442, 57 A. 334 (1904). We therefore reverse.

■ ■ We agree with the trial court that the conveyances described in the deeds of 1952 and 1956 did not create a life estate. RSA 477:24 provides that "[a] deed or reservation of real estate shall be construed to convey or reserve an interest in fee simple unless a different intention clearly appears in the deed." No such intention appears in the deeds. The deed provisions in question did not terminate the grantees' estate automatically upon the death of the grantees. *See* Restatement of Property §§ 107, 108 (1936). Before the plaintiff could reacquire ownership in the property, he was obliged to notify the devisees of his intent to exercise the option and to tender payment to them. The language in the deed conveyed to the grantees a fee simple defeasible, subject to the repurchase provisions. *See* Restatement of Property, §§ 44, 45 (1936).

The repurchase provisions may be divided into two parts; one a preemption clause, the other an option clause. The preemption clause requires that if the owners wish to sell or convey the property during their lives, they are first required to offer it to the plaintiff at the agreed price. The option provision covers the transfer of property on the death of the survivor of the grantees. It provides that the grantor has an option to repurchase the premises for the price agreed as long as the option is exercised within sixty days of the survivor's death. The validity of these two provisions must be considered separately in order to give full effect to the intentions of the parties. *See, e.g., Edgerly v. Barker*, 66 N.H. 434, 31 A. 900 (1891).

■ We need not consider the validity of the preemption clause, because it became impossible after Miss Thompson's death. The option clause was triggered by the death of the survivor. The validity of an option agreement is judged by the Rule Against Perpetuities. Restatement of Property, Div. IV, Part II, at 2376 (1944). *See also* L. M. Simes and A. F. Smith, The Law of Future Interests 1154 (1956); 6 American Law of Property 24.56 (A. J. Casner ed. 1952).

■ ■ The Rule Against Perpetuities provides that no interest in property is good " 'unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest'."

*McAllister v. Elliot*, 83 N.H. 225, 229, 140 A. 708, 710 (citations omitted). *See also Merchants Nat'l Bank v. Curtis*, 98 N.H. 225, 97 A.2d 207 (1953). The option provision in question was drafted to expire within sixty days of the death of the surviving grantee, well within the Rule Against Perpetuities. Defendants claim that even if the fixed price option conforms to the Rule Against Perpetuities, it so severely restricts alienability as to work an unreasonable result. We disagree. The option agreement increased alienability of the property. Only upon assurance that the deed would protect the plaintiff's interest in the property did he agree to sell it at all. Without this provision the plaintiff may well have continued his ownership of the land, eliminating any benefits derived from the transfer of property. Compared to other lawful impediments to transferability of property, *e.g.*, life interests, long term leases, possibility of reverter, and the right of reentry for condition broken, this option agreement creates a lesser restraint and does not work an unreasonable result.

■ The trial court erroneously found that enforcement of the option agreement would work an unconscionable result. The option agreement was included as a result of negotiations between two parties of equal bargaining strength. Each party was represented by able counsel. As we have noted above, it was only because the plaintiff's interest in the property was adequately protected that he agreed to sell. As Miss Thompson wrote her attorney, "we know we are being unbusinesslike and the terms are unusual but we are doing it with our eyes open." Even the defendant, Victor King, testified that no matter what advice they had received, these two women "would have gone right ahead and done it." The buyers were not coerced into accepting unfavorable terms of contract. Their overriding interest was in acquiring the land for their own use, as opposed for investment purposes.

The trial court found that the large increase in market value of the two pieces of property so changed the circumstances surrounding the conveyance as to make the option agreement unconscionable. The trial court specifically found that it was obvious that the value of this property would increase with time. It is thus reasonable to assume that both parties contemplated this increase when drafting the deed provisions. The buyers so strongly desired ownership of this property that they were willing to negotiate the terms of sale, including the option provisions, with the unwilling seller.

■ ■ The defendants further argue that the improvements made to the cottage should not be allowed to benefit the plaintiff.

Improvement to property alone is not a sufficient basis on which to deny specific performance. *Moore v. Sterling Warner Indus. Inv. Co.*, 114 N.H. 520, 323 A.2d 581 (1974). There is evidence that these improvements were contemplated by both parties at the time of the sale and thus were part of the consideration which induced the plaintiff to sell the cottage. The fact that the deed expressly denies compensation for improvements lends support to our conclusion that the making of improvements was part of the consideration offered by the purchasers. Further, the improvements made on the house were used by the buyers for twenty-three years. There is no evidence in the record as to what extent the improvements actually increased the value of the cottage. This court has held that a person making improvements on property assumes the risk for the increase in value accruing to property when he or she is aware of the conditions attached to the estate. *Walker v. Walker*, 64 N.H. 55, 5 A. 460 (1886). All provisions of the deed were negotiated by two willing parties exercising their freedom to contract. U.S. CONST. art. 1, § 10. Neither party exerted undue influence on the other. On the contrary, through negotiations, the parties were able to strike a bargain which benefited them both. There can be no doubt that each party knew and fully understood what the agreement was; after long negotiations the second property transfer substantially adopted the terms of the first conveyance. The trial court made no findings of fraud, bad faith, undue influence, or duress, which are the traditional bases for avoiding a contract. The trial court rejected the defendant's assertion of the Statute of Frauds as a defense. The law in New Hampshire is clear:

> 'In the nature of things obligations arising from contractual relations cannot justly and reasonably be displaced by other obligations . . . There is no law or judicial power by which considerations of equity may reform contracts which are free from legal attack on the grounds of fraud or mistake. . . .' The hardship which will result to the plaintiffs in this case is not one 'the possibility of which was not evident at the time the agreement was executed. . . .' Hardship resulting from what may prove to be an improvident bargain fairly and voluntarily assumed by the contract does not entitle a party to be relieved of its undertaking in equity. . . .

*Fuller Enterprises v. Manchester Sav. Bank*, 102 N.H. 117, 122, 152 A.2d 179, 182 (1959) (citations omitted). Specific performance can-

not be denied to permit persons to avoid improvident agreements. The provisions of the deed on these facts must be specifically enforced. *See Chute v. Chute,* 117 N.H. 676, 377 A.2d 890 (1977).

*Exceptions sustained.*

BROCK, J., did not sit; the others concurred.