Rockingham
No. 88-133

GREAT BAY SCHOOL & TRAINING CENTER

v.

SIMPLEX WIRE AND CABLE COMPANY

June 13, 1989

*Shaines & McEachern P.A.*, of Portsmouth (*Jonathan M. Flagg* on the brief and orally), for the plaintiff.

*Sheehan, Phinney, Bass & Green P.A.*, of Manchester (*Mark F. Weaver* on the brief and orally), for the defendant.

BROCK, C.J. The plaintiff, the Great Bay School & Training Center, appeals from a Superior Court (*Gray*, J.) order denying its petition to have declared unenforceable a deed restriction giving the defendant, the Simplex Wire and Cable Company, a preemptive right to repurchase, at a discount, property it had conveyed to the plaintiff's predecessor. We affirm.

The plaintiff's predecessor, the Great Bay Association for Retarded Children (GBARC), was founded in 1954 to provide education and training for mentally retarded children and support programs for their parents. In the early 1960's, GBARC sought to acquire property on which it could establish a permanent school, and entered into negotiations with the defendant in regard to a 7.7-acre site, containing a house and barn, adjacent to the defendant's cable plant in Newington. Because GBARC lacked the capital to purchase desirable property on the open market, the defendant agreed in 1963 to sell its site to GBARC for $35,000, representing roughly 70% of the property's non-commercial value of approximately $50,000. This enabled GBARC to secure 100% financing for the purchase despite the association's weak financial condition. In 1963, the commercial value of the property was between $135,000 and $150,000.

The deed from the defendant to GBARC barred GBARC from maintaining a nuisance action against the defendant stemming from the defendant's industrial activities and prevented GBARC from securing additional mortgages on the property without the defendant's approval. The deed also contained the repurchase agreement which gave rise to the present controversy:

> "The Grantee, for itself, its successors and assigns, agrees that if it gives up the operation of a home, school, or other similar facility for the benefit of retarded children, either voluntarily, or involuntarily by reason of the destruction of the buildings by casualty, by reason of bankruptcy, or for any other reason, the Grantor, its successors or assigns, shall have the absolute right to re-purchase said premises
> . . . .
> ". . . at a figure which is . . . seventy (70%) percent of the then appraised valuation of the premises for non-commercial use. . . ."

In 1971, GBARC conveyed the premises to the plaintiff, subject to the 1963 deed restrictions.

In 1979, the plaintiff sought the assistance of the United States Department of Housing and Urban Development (HUD) in building a permanent residence for mentally retarded persons on its Newington property, but HUD would not agree to finance the project unless the deed restrictions were removed. To enable the plaintiff to obtain the loan, the defendant "rescinded and declared void" the deed restrictions, and the plaintiff agreed that once HUD no longer had a security interest in the property, the property would again be subject to restrictions, including one providing that:

> ". . . if [the plaintiff] gives up the operation of the Property as a group home for the developmentally disabled or other similar facility, either voluntarily, or involuntarily by reason of the destruction of the buildings by casualty, by reason of bankruptcy, or for any other reason, Simplex . . . shall have the absolute right to re-purchase said premises. . . .

> ". . . at a re-purchase price . . . to be seventy (70%) percent of the then appraised value of the premises for non-commercial use."

In 1986, the plaintiff brought an action in the superior court seeking to have the defendant's preemptive right declared unenforceable. The Master (*Charles T. Gallagher*, Esq.) heard testimony indicating that the site's present highest non-commercial value was approximately $2,500,000 and its highest commercial value was approximately $6,000,000. The master found that the area surrounding the site, which had been unimproved farmland and woodland in 1963, had become a busy commercial area featuring shopping malls and automobile dealerships. The master found that, in light of these changes, a large discrepancy now existed between the commercial and non-commercial values of the site and that allowing the defendant to repurchase the property for 70% of its non-commercial value would produce a "seemingly unfair result." Nevertheless, the master ruled that because specific performance could not be denied to permit a party to avoid an improvident agreement, the plaintiff would face enforcement of the valid provision in the event the defendant exercised its right. The master also ruled that, because the plaintiff had reaffirmed the restrictions in 1979, the plaintiff could not claim that circumstances had changed so substantially since 1963 as to render the deed

unenforceable. The master found that the 1979 reaffirmance extended the period limited by the rule against perpetuities from 1984 until at least the year 2000. The trial court approved the master's report and the plaintiff appealed, contending that the preemptive right was no longer valid both because the restriction violated the rule against perpetuities and because circumstances had changed to such a degree that specific performance would lead to an unfair result.

The plaintiff contends that the trial court erred in ruling that the 1979 "reaffirmance" of the defendant's preemptive right extended the period limited by the rule against perpetuities at least to the year 2000. The rule against perpetuities provides that no interest in property is valid "'unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest.'" *Emerson v. King*, 118 N.H. 684, 687, 394 A.2d 51, 54 (1978) (quoting *McAllister v. Elliot*, 83 N.H. 225, 229, 140 A. 708, 710 (1928)). While the rule may not apply to all preemptive rights, it has been held to apply to those which pose a substantial restraint on alienation. *See Cambridge Co. v. East Slope Investment Corp.*, 700 P.2d 537, 540–41 (Colo. 1985); *see also* 70 C.J.S. *Perpetuities* § 25 (1987); Annotation, *Pre-emptive Rights to Realty as Violation of Rule Against Perpetuities or Rule Concerning Restraints on Alienation*, 40 A.L.R.3d 920, 939–42 (1971). The defendant's preemptive right would yield to the plaintiff a sale price approximately 25% of the sum the plaintiff could expect were its property freely alienable, and the restriction is therefore subject to the rule. *Cf. North Bay Council, Inc. v. Grinnell*, 123 N.H. 321, 324, 461 A.2d 114, 116 (1983) (improperly relying on *Emerson v. King* for proposition that rule against perpetuities applies to preemptive rights in New Hampshire). As a corporation cannot be a life in being, *see Fitchie v. Brown*, 211 U.S. 321, 334 (1908), the relevant period is 21 years. The 1963 restriction was not void at inception, however, because New Hampshire has adopted the "wait and see" doctrine, under which the validity of an interest will be determined by whether it actually vests within the prescribed period rather than by whether, at the time it is created, it must necessarily vest within that period. *Merchants &c. Bank v. Curtis*, 98 N.H. 225, 231–32, 97 A.2d 207, 211–12 (1953). Therefore, under the rule against perpetuities, the defendant's preemptive right would have lapsed in 1984, were it not for the 1979 agreement. .

The 1979 agreement "rescinded and declared void" the 1963 restrictions. The parties to the agreement also agreed that at such time as HUD no longer had a security interest in the property, certain conditions "shall be placed upon the use of the Property." These conditions included, in slightly different language than that contained in the 1963 deed, the defendant's right to re-purchase the site for 70% of its non-commercial value, if the plaintiff discontinued its operations on the site. Rather than "reaffirming" the 1963 restriction, this agreement instituted a new condition on the use of the property. The fact that the condition resembled the 1963 deed restriction does not negate its binding effect upon the parties. According to the rule against perpetuities, as modified by the "wait and see" doctrine, if the defendant's right does not vest within 21 years of the date HUD no longer has a security interest in the property, the defendant's interest will be void. On the assumption that the rule against perpetuities would apply on the facts of this case, this would not come about until at least the year 2000. *Compare Cambridge Co. v. East Slope Investment Corp. supra with North Bay Council, Inc. v. Grinnell supra.*

The 1979 agreement does not, as the plaintiff argues, impermissibly modify the rule against perpetuities. The rule remains in force and applies to the interest created in the 1979 agreement. In addition, the plaintiff has not pointed to any persuasive evidence in the record that the 1979 agreement affected only a portion of the site.

■ The plaintiff also contends that the trial court erred in ruling that because "specific performance cannot be denied to permit persons to avoid improvident agreements," the preemptive purchase restriction was enforceable. The plaintiff argues that the unfairness that would result from enforcement of the 1963 agreement due to changes in circumstances justifies a declaration that the preemptive right is invalid. We hold that the 1963 restrictions were rescinded in 1979, but that the 1979 restrictions are enforceable for several reasons.

First, the plaintiff has not demonstrated to this court that specific performance would be unfair, despite the trial court's finding that enforcement of the restriction would yield a "seemingly unfair result." In 1963, the plaintiff's predecessor, GBARC, sought to establish a permanent school but lacked the capital to purchase a suitable site on the open market. Instead, the defendant agreed to sell GBARC a site for a sum representing 70% of the property's non-commercial value. The non-commercial value was estimated to be

approximately 35% of the commercial value, and the sale price, therefore, was roughly 25% of the property's commercial value. GBARC freely accepted this discount and the accompanying restriction so it could secure 100% financing.

The plaintiff alleges that if it chooses to discontinue operations at the site, and if the defendant then exercises its preemptive right to repurchase the property at a discount, the plaintiff would suffer a tremendous financial loss, including the loss of its investment in improvements upon the land. Recent appraisals, however, indicate that while the property's value has appreciated during the last two and one-half decades, the ratio of non-commercial value to commercial value has remained relatively unchanged since 1963. Sale to the defendant for 70% of the property's non-commercial value will surely yield less to the plaintiff than would a sale on the open market, but this merely balances the price foregone by the defendant in its desire to help GBARC in 1963. In addition, the plaintiff assumed the risk that the improvements it made to the property would be subject to the deed restrictions. *Emerson v. King*, 118 N.H. at 689, 394 A.2d at 54.

Second, even if enforcement of the restriction would lead to an unfair result, that by itself does not justify a declaration that the restrictive land covenant is unenforceable. This court has plainly stated that "[s]pecific performance cannot be denied to permit persons to avoid improvident agreements." *Emerson v. King*, 118 N.H. at 689–90, 394 A.2d at 55. The obligations of a contract that otherwise binds the parties may not be avoided simply because one party claims that enforcement of the contract would cause it hardship. *Fuller Enterprises v. Manchester Sav. Bank*, 102 N.H. 117, 122, 152 A.2d 179, 182 (1959).

Third, we are unconvinced by the plaintiff's argument that, in this case, changed circumstances justify non-enforcement of the restrictive deed convenant. Circumstances can hardly have changed substantially since 1979. We therefore uphold the trial court's rejection of the plaintiff's petition to have the defendant's preemptive right declared unenforceable.

*Affirmed.*

All concurred.