USCA1 Opinion

 

 September 27, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT No. 92-2293 WHITNEY BROS. CO., ET AL., Plaintiffs, Appellees, v. DAVID C. SPRAFKIN AND JOAN BARENHOLTZ, TRUSTEES OF THE BERNARD M. BARENHOLTZ TRUST, ET AL., Defendants, Appellants. ____________________ ERRATA SHEET The opinion of this Court issued on September 9, 1993, is amended as follows: Page 3, second complete paragraph, line 1, delete "defendant" and insert "Bernard Barenholtz's (and defendants') attorney, Samuel M." Page 3, second complete paragraph, line 2, delete "Bernard" and insert "Mr." Page 3, last line, substitute "first" for "third." Page 13, line 1-2, delete ", one of whom, ironically, was a director of Whitney Brothers,". UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-2293 WHITNEY BROS. CO., ET AL., Plaintiffs, Appellees, v. DAVID C. SPRAFKIN AND JOAN BARENHOLTZ, TRUSTEES OF THE BERNARD M. BARENHOLTZ TRUST, ET AL. Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Norman H. Stahl, U.S. District Judge] ___________________ ____________________ Before Torruella, Cyr and Boudin, Circuit Judges. ______________ _____________________ Richard B. Couser, with whom James P. Bassett, Cordell A. __________________ ________________ __________ Johnston, Orr and Reno, P.A., and Samuel M. Sprafkin, were on ________ ___________________ ___________________ brief for appellants. James R. Muirhead, with whom Peter D. Anderson, and McLane, _________________ _________________ _______ Graf, Raulerson & Middleton, Professional Association, were on _______________________________________________________ brief for appellees. ____________________ September 9, 1993 ____________________ TORRUELLA, Circuit Judge. Plaintiffs/appellees are ______________ Whitney Brothers Company ("Whitney Brothers") and Griffin M. Stabler, Whitney Brothers' president, chief executive officer and director. Defendants/appellants, David C. Sprafkin and Joan Barenholtz, are the trustees of the Bernard M. Barenholtz Trust, Whitney Brothers' majority shareholder. Plaintiffs sued to compel defendants to sell their stock in Whitney Brothers pursuant to a written buy/sell contract. After two years of litigation, the district court ordered the sale at defendants' asking price. In the order, the district court also held that: (1) plaintiffs were entitled to prepay the promissory note bearing the sale price; (2) interest would begin to accrue when plaintiffs execute the note; and (3) plaintiffs were entitled to attorneys' fees. Defendants appealed only on the issues of prepayment and interest. Plaintiffs subsequently moved for attorneys' fees for this appeal. W e reverse the district court's judgment with respect to prepayment, affirm with respect to the accrual of interest, and deny plaintiffs' motion for attorneys' fees on this appeal. BACKGROUND BACKGROUND __________ Whitney Brothers is a New Hampshire corporation that produces wooden learning materials. Bernard Barenholtz acquired 62.6% of the company's outstanding shares in 1969. Ten years later, he transferred these shares to the Bernard M. Barenholtz Trust (the "Trust") and named himself and defendant David Sprafkin trustees. Plaintiff Griffin Stabler owns 32.7% of the -2- shares, and his son, David Stabler, owns the remaining 4.7%. On January 27, 1987, Whitney Brothers, the trustees, and Griffin Stabler executed a written buy/sell agreement. Under the agreement, Whitney Brothers would buy the Trust's shares within ninety days of the death of Bernard Barenholtz and buy Griffin Stabler's shares within ninety days of Stabler's death. To determine the purchase price, the parties would plug an agreed-upon appraisal into a formula to determine the purchase price. If the parties could not agree on an appraisal, they would each get their own and plug the average into the formula. The contract also provided for payment by a promissory note, with monthly installments over ten years at 10% interest per annum. The agreement did not mention whether prepayment of the note was permissible. On February 3, 1987, Bernard Barenholtz's (and defendants') attorney, Samuel M. Sprafkin wrote a letter (the "February 3 letter") advising Mr. Barenholtz that: (1) David Stabler, as a shareholder, should consent to the contract; (2) the promissory note should be prepayable without penalty; and (3) Article 4 of the contract should have an additional provision not relevant to this appeal. Plaintiffs contend, and the district court found, that after Bernard Barenholtz received the letter, the parties orally agreed to the prepayment provision. Barenholtz then placed the letter in a file with the written contract and David Stabler signed an addendum to the contract pursuant to Sprafkin's first suggestion. -3- When Bernard Barenholtz died, on August 5, 1989, his daughter, defendant Joan Barenholtz, assumed his trustee position. Whitney Bros. Co. v. Sprafkin, No. 90-054-S, at 4 (D. _________________ ________ N.H. filed Sept. 30, 1992). A few days later, plaintiff Stabler and defendant Sprafkin discussed the contract's required stock sale. Id. One of the parties asked E.F. Greene to update a past ___ appraisal of Whitney Brothers.1 Id. Sprafkin rejected Greene's ___ appraisal; Whitney Brothers accepted it. Id. Relying on ___ Greene's appraisal, Whitney Brothers tendered to defendants a prepayable promissory note for $1,178,000 for the stock (the "September 1989 Tender").2 Id. at 4-5. ___ Instead of responding immediately, defendants secured a significantly higher appraisal from Alfred Schimmel. Id. They ___ then rejected Whitney Brothers' tender by letter, without mentioning the note's prepayment clause. When Stabler learned of defendants' appraisal, he rejected it as too high. Ultimately, plaintiffs sued to compel the transfer of the stock. Ten months later, on December 13, 1990, as part of their cross-motion for summary judgment, plaintiffs offered to tender either $1,349,3433 immediately or, if the court found that the agreement did not permit prepayment, that amount over ____________________ 1 The parties disagree over who requested the update. 2 Defendants contend that Stabler made the tender knowing that they did not accept Greene's appraisal and planned to obtain one of their own. 3 This was the price calculated under the contract by plugging the average of the two appraisals into the formula. -4- ten years at 10% interest (the "December 1990 Tender"). Defendants again rejected the tender. They now contend that they rejected it because: (1) it omitted $145,000 worth of interest that had accrued since November 3, 1989, 90 days after the death of Bernard Barenholtz; and (2) it was invalid because the first option permitted prepayment, and the second option was conditioned upon a court judgment that prepayment was prohibited. In response to the cross-motions for summary judgment, the district court: (1) ordered defendants to sell their stock; (2) found that plaintiffs were not entitled to prepay the note; and (3) decided to hold a trial on the issue of the stock's price. See Whitney Bros. Co. v. Sprafkin, No. 90-54-S (D.N.H. ______________________ ________ filed June 5, 1991). After the trial, the court issued an order in which it: (1) required plaintiffs to pay $1,349,343 for the stock; (2) reconsidered and reversed, sua sponte, its previous order and __________ ruled that plaintiffs could pay for the stock with a prepayable promissory note; (3) ruled that interest on the note would begin to accrue when it was executed, and not before; and (4) awarded attorneys' fees to plaintiffs based on defendants' bad faith conduct of the litigation. See Whitney Bros. Co. v. Sprafkin, ___ __________________ ________ No. 90-054-S (D. N.H. filed Sept. 30, 1992). When the court entered judgment on the order the following day, the court also awarded prejudgment interest pursuant to N.H. Rev. Stat. Ann. 524:1-b, "if appropriate." Whitney Bros. Co. v. Sprafkin, ______________ __________________ ________ No. 1:90-cv-0054-S (D.N.H. filed Oct. 1, 1992) (emphasis added). -5- Defendants appeal on only two issues: (1) the prepayability of the note; and (2) the date from which interest accrues. In addition, plaintiffs request attorneys' fees for this appeal. DISCUSSION DISCUSSION __________ I. PREPAYABILITY I. PREPAYABILITY Article 4 of the buy/sell contract provides: The purchase price . . . shall be paid ______________ with a negotiable promissory note which _____ shall provide for the payment of the ___________________ purchase price in 10 years with interest at the rate of 10% per annum, principal and interest payable in 120 equal, consecutive monthly payments. (emphasis added). The agreement nowhere mentions prepayment of the proposed promissory note. At trial, the district court conditionally allowed evidence of a subsequent oral agreement permitting prepayment of the note. Ultimately, the court admitted the evidence, finding that it was not precluded by the parol evidence rule. In the same ruling, the court found that the parties indeed entered the alleged oral agreement. The court erred in finding the asserted oral agreement binding on the parties. Article 5 of the written buy/sell contract prohibits the parties from orally altering or amending the written contract.4 Under N.H. Rev. Stat. Ann. 382-A:2- ____________________ 4 Article 5 provides: This agreement may be altered, amended or terminated by a writing signed by all of the shareholders except David G. Stabler, -6- 209(2), "[a] signed agreement which excludes modification or rescission except by a signed writing cannot be otherwise modified or rescinded. . . ." While an attempted modification can constitute a waiver, that waiver can be retracted absent "a material change of position in reliance on that waiver." N.H. Rev. Stat. Ann. 382-A: 2-209(4) and (5). Here, plaintiffs allege no alteration of their position in reliance on a prepayment provision. Thus, we can find no binding waiver of ____________________ and the Corporation. Although the Article does not state in mandatory terms that alterations must be in writing, defendants argue that since ____ agreements may always be altered by a writing signed by the parties, the Article must have been intended to exclude oral modifications. While we do not foreclose other purposes of this clause, we agree that the purport of the provision is to require that alterations be in writing. In addition, plaintiffs never countered defendants' argument that the Article precludes oral alterations and amendments to the contract. In response to this argument, plaintiffs, apparently characterizing the clause as an integration clause, argued that: (1) such a clause did not mandate a finding that the contract was totally integrated; (2) the contract was not a total integration; (3) the February 3 letter "contemplated an extra-contractual understanding about a term of the agreement," rather than a variation; and (4) therefore, since the court found an independent agreement, the court could find the note was prepayable. This argument ignores defendants' assertion that the clause prohibits oral alterations of the contract. At oral argument, when questioned about the prohibition, plaintiffs' counsel simply argued that the oral agreement was not a modification because the contract did not mention prepayment. Counsel did state that Article 5 "supposedly" precludes oral __________ modification, suggesting a possible disagreement on that interpretation. However, since defendants raised Article 5 at the trial level, see Defendants' Objections to Plaintiffs' Cross- ___ ____________________________________________ Motion for Summary Judgment at 11; Defendants' Post Trial Brief ___________________________ _____________________________ at 44-45, and on appeal, Appellants' Brief at 17-19, 21 n.7, we _________________ construe plaintiffs' failure to argue that the Article does not prohibit oral alteration as a concession that it does. -7- Article 5 by defendants.5 Plaintiffs contend that since the written contract says nothing about prepayment, a subsequent agreement to allow prepayment does not constitute an alteration or amendment under Article 5. Rather, they argue that the agreement was independent of the written contract. Apparently, the district court agreed. Although the court did not explicitly address Article 5, it did conclude that a prepayment provision "does not, by its terms, vary or contradict the terms of the Agreement. . . ." Whitney Bros. Co., No. 90-054-S (Sept. 30, __________________ 1992), at 13.6 We review this determination de novo as it centers _______ around the interpretation of the language of the written contract. See In Re SPM Mfg. Corp., 984 F.2d 1305, 1311 (1st ___ _____________________ Cir. 1993) (de novo review of bankruptcy court's interpretation _______ of unambiguous contract); Hermes Automation Technology, Inc. v. ___________________________________ Hyundai Elec. Ind., 915 F.2d 739, 745 (1st Cir. 1990) ____________________ (interpretation of plain language of release agreement was question of law warranting de novo review). _______ On review, we find that the district court erred in its ____________________ 5 We apply 2-209 by analogy. Although that section does not apply to the sale of securities, the purpose behind the rule -- "to protect against false allegations of oral modifications" -- equally applies to these contracts. See 2-209, comment 3. ___ 6 This finding reversed the district court's first order which found that "[t]he prepayment term is inconsistent with the plain meaning of the Agreement, which clearly provides for payment over a period of years." Whitney Bros. Co,, No. 90-54-S (June 5, _________________ 1991), at 16-17. -8- determination.7 The written buy/sell contract provision regarding payment expressly contemplates payment over ten years at 10% interest. If plaintiffs prepay the note, they will avoid paying the 10% interest and thereby deviate from an express provision of the contract. Moreover, 10% interest over ten years amounts to a significant percentage of the contract price. Since prepayment would substantially alter the parties' financial positions under the contract, an agreement to permit prepayment constitutes an alteration under Article 5. Furthermore, although the New Hampshire Supreme Court has never encountered this precise issue, recent holdings from that court support our conclusion. In DeCato Brothers, Inc. v. ______________________ Westinghouse Credit Corp., 529 A.2d 952, 956 (N.H. 1987), the __________________________ court stated, "generally, absent manifest injustice, an instrument is payable in full according to its tenor, and the maker has no right to prepay in the absence of an express provision providing for prepayment." Later, in Patterson v. _________ Tirollo, 133 581 A.2d 74, 77 (N.H. 1990) (quoting Fuller _______ ______ Enterprises v. Manchester Sav. Bank, 152 A.2d 179, 181 (N.H. ___________ _____________________ 1959)), the court reaffirmed that "the law is clear in New Hampshire that negotiable instruments are 'payable at the time fixed therein,' and in the absence of an express provision that a mortgagor is entitled to prepay his or her note, the mortgagor has no legal rightto pay the debt inadvance of the maturitydate." ____________________ 7 We note that our analysis would not change under a more deferential standard of review as we find that the court clearly erred in this determination. -9- Although these cases involve actual promissory notes, rather than agreements to make promissory notes, by finding prepayment precluded in the absence of a specific provision authorizing it, the New Hampshire Supreme Court demonstrated a belief that prepayment significantly alters the rights of the parties involved. Finally, plaintiffs' last-ditch argument, that Sprafkin's February 3 letter constitutes a sufficient writing, needs little deliberation.8 Sprafkin wrote the letter to Barenholtz. Thus, it cannot be construed, as plaintiffs propose, as a written offer which plaintiffs were entitled to accept orally. Because Article 5 of the contract precludes plaintiffs' asserted oral agreement, the district court erred in finding the note prepayable.9 II. INTEREST II. INTEREST Defendants next assign error to the district court's ____________________ 8 Plaintiffs did not make this argument in response to defendants' Article 5 argument. They made the argument as a response to defendants' invocation of the statute of frauds. However, we address the issue to alleviate any doubts that the argument might have assisted them against the Article 5 prohibition. 9 Plaintiffs stress on appeal the district court's finding that the parties formed the oral agreement after executing the written _____ contract, and they have not challenged this finding. Additionally, they specifically argued to this court that "the evidence Plaintiffs offered was to prove a subsequent agreement . __________ . ." (Plaintiffs-Appellees' Brief at 29). Thus, we need not address defendants' alternative arguments that the oral agreement could not bind them if it had been formed before or at the time of the written contract. -10- determination that interest will not accrue until plaintiffs execute the promissory note. They offer two principal arguments to support this proposition. First, defendants find their entitlement to prejudgment interest in N.H. Rev. Stat. Ann. 524:1-b (1992). Under that section, when a party wins pecuniary damages, he is entitled to prejudgment interest on the award. Defendants argue that by finding the stock's purchase price to be that advocated by defendants, the court granted them pecuniary damages. Defendants were not awarded pecuniary damages, however. Rather, plaintiffs were awarded specific performance of the contract at the price that the court found stipulated in their cross-motion for summary judgment. In its second order, the district court reconsidered its summary judgment ruling and determined that since plaintiffs offered to pay defendants' advocated price at the time, the court should have ordered the sale at that price. Thus, the court granted plaintiffs' cross-motion for summary judgment to the extent that it sought to compel defendants to sell the stock at defendants' price. See Whitney Bros. Co., No. 90-054-S (Sept. ___ __________________ 30, 1992), at 10-11. Indeed, the court specifically referred to plaintiffs as "prevailing parties." Id. at 19.10 Thus, ___ 524:1-b provides no basis for awarding defendants prejudgment ____________________ 10 In light of the court's conclusion that the appraisal used to calculate defendants' advocated price lacked factual foundation, see Whitney Bros. Co., No. 90-054-S (Sept. 30, 1992), at 21, the ___ _________________ court's statement that "the price of the securities . . . is $1,349,343" does not convince us that the court believed that to be the price contemplated by the contract. -11- interest.11 Second, defendants argue that plaintiffs owe them interest under the written contract, beginning November 3, 1989, 90 days after the death of Bernard Barenholtz. The theory is that plaintiffs never made a valid tender within the required 90 days, and therefore defendants deserve the interest that accrued from that date. See Lancaster Development Corp. v. Kattar, 262 ___ ___________________________ ______ A.2d 278, 280-81 (N.H. 1970) (where plaintiff was ready, willing and able to perform, and defendant made faulty tender, plaintiff was not responsible for interest accruing from the contracted date of sale). Specifically, defendants claim that plaintiffs' September 1989 tender was invalid because: (1) the note was $170,000 less than the defendants' advocated purchase price; and (2) the note contained a prepayment provision. We cannot conclude that defendants are entitled to interest under the agreement based on the September 1989 tender. With respect to the purchase price, defendants failed to tell plaintiffs their requested price within the prescribed ninety days. Moreover, the district court specifically determined that the appraisal on which their price was based was so lacking in ____________________ 11 Defendants' assertion that the court's judgment which ordered "prejudgment interest pursuant to NH RSA 524:1-b, if appropriate ______________ . . . " (emphasis added) was a judgment for interest in their favor that had to be appealed by plaintiff, lacks merit. As the court's opinion did not indicate a belief that it was awarding defendants damages by granting plaintiffs' cross-motion for summary judgment, we cannot construe the court's reference to the statute as an award of interest for defendants. Moreover, the award specifically ordered prejudgment interest only if appropriate. As we explained above, such interest would be inappropriate here. -12- factual foundation that it should not have even been admitted at trial. That plaintiffs later acquiesced to defendants' price in order to end this disturbing litigation does not require a finding that they were wrong to make their initial offer at the time they made it. Similarly, although we found that plaintiffs were not entitled to prepay the note, we are not convinced that the prepayment provision of the September 1989 tender rendered the tender faulty at the time it was made. The record reveals no evidence that defendants complained of the prepayment clause before June 29, 1990, nine months after the tender. They cannot now claim that the prepayment provision in the September 1989 tender stalled the sale. Cf. Elliott v. Dew, 212 S.E.2d 421 ___ _______ ___ (S.C. 1975) (if defect in tender not objected to when tender is made, cannot use defect to prevent performance of contract). Moreover, defendants, consistently complained that Whitney Brothers could not afford the purchase. (The district court later found that the evidence amply supported a finding to the contrary). Yet, at the same time, defendants demanded what the district court found to be a trumped-up price. This suggests that defendants were attempting to hamper the sale that the contract required. Thus, even assuming plaintiffs' tender was somehow faulty, as defendants were not willing to perform at the time, they are not entitled to interest. Cf. Platsis v. ___ _______ Diafokeris, 511 A.2d 535 (Md. App. 1986) (faulty tender does not __________ trigger accrual of interest if clear that only excessive amount -13- would be accepted). Finally, as defendants were not entitled to interest beginning November 3, their refusal to accept the December 1990 tender because it failed to include such interest precludes the accrual of interest from that time. In addition, defendants' parenthetical argument that the December 1990 tender was faulty because it was conditional also fails. When the district court determined that prepayment was prohibited, the tender became unconditional. Yet, defendants still refused to accept it without interest running from November 3. Again, defendants were at no time willing to perform. Accordingly, we affirm the district court's decision that interest should begin to accrue when the note is executed. III. ATTORNEYS' FEES III. ATTORNEYS' FEES As defendants won their appeal with respect to prepayment, plaintiffs are not entitled to attorneys' fees for that issue. In addition, although defendants' arguments with respect to interest were unconvincing, we do not find that they went "against the overwhelming weight of precedent," that defendants "could set forth no facts to support [their] position," or that "there simply was no legitimate basis for pursuing an appeal." See Kowalski v. Gagne, 914 F.2d 299, 309 ___ ________ _____ (1st Cir. 1990). Accordingly, we deny plaintiffs' motion for attorneys' fees. Finally, plaintiffs request a finding that if we affirm the district court's judgment, defendants may not appeal their -14- motion under Fed. R. Civ. P. 59(e) to alter the judgment with respect to fees. Plaintiffs cite no cases that would justify such a finding. Thus, we decline to make such a finding or otherwise consider the issue of the award of attorneys' fees by the district court. Affirmed in part; reversed in part. Motion for _______________________________________________________ attorneys' fees in this court denied. ____________________________________ -15-