## MARTIN BUEL *vs.* HENRY A. PUMPHREY.

In an action of *trover* for the value of a negro woman, the plaintiff after proving title, proved that his agent went to the residence of the defendant, with an order demanding that the negro should be delivered up to him as agent of the plaintiff; that defendant refused to deliver her up, saying that if he, "the defendant, did not get her, she should never be of service to the plaintiff or any one else." At the time the agent presented the order, he told defendant that he, the agent, had purchased the negro. HELD, that this was a sufficient demand and refusal to sustain *trover.*

If a bailor sell during bailment, the purchaser, and not the bailor, is the party after sale to demand the goods of the bailee and on refusal to bring *trover.*

But if goods be sold and before delivery come into possession of another who refuses on demand to deliver them up, either to the purchaser or seller, such refusal, on a rescinding of the contract of sale, will enable the vendor to maintain *trover.*

Where a party says he will "not deliver the goods to any person whatsoever," such a declaration must be taken as a refusal both to seller and purchaser, and *quoad* them amounts to a conversion.

If a party declares beforehand that if a tender is made to him he will not accept it, such declaration dispenses with a formal tender.

It is immaterial whether the defendant in this case believed the woman to be the property of plaintiff or of the agent who presented the order, the manner of his refusal enured for all purposes to the one party and the other.

The fact that after the demand the plaintiff endeavored to take possession of the negro, and offered a reward for her apprehension, will not prevent his maintaining *trover* for her.

The refusal of the defendant was a conversion from the time it was made.

Where goods wrongfu'ly converted are afterwards returned *trover* will still lie, though if they were returned speedily and in as good plight as when taken, the damages will be merely nominal.

APPEAL from Prince George's county court.

This was an action of *trover*, brought by the appellee against the appellant, to recover the value of a negro slave, Ann, alleged to be the property of the plaintiff. The plea was *non cul.*

*Exception.* The plaintiff having proved title to the negro in question, further proved by Connell, a competent witness, that in August 1847, witness went to the residence of defendant, as the agent of, and with an order (which witness since destroyed) from the plaintiff to deliver up to witness the negro woman in controversy and her child; that defendant on that occasion stated that he had hired the negro from the plaintiff, who had the right to take her away at any time; that defendant asked witness if he was trading for the south, to which witness replied he was not; that witness stated that he had purchased of the plaintiff the said negro for his sister-in-law, in Washington, that defendant then said, if the woman knew him he could take her; that he saw the woman, who said she knew him, and defendant asked him to wait until the woman had done her breakfast; that in a few minutes after this defendant had some conversation with his wife, and then stated to witness that he could not have her, that the society to which he (the defendant) belonged would not permit him to hold slaves, and they could not give the price that was asked for her, and that if defendant did not get her, she should never be of service to Pumphrey or any one else. The plaintiff further proved by the same witness, that some days afterwards he, in company with the plaintiff, went after the said negro woman, that they did not see the defendant on his farm or at his house, but they saw the woman escape through the window and run to the woods, and that some months afterwards the plaintiff advertised her as a runaway, offering a reward of $50 for her if taken out of the State. He further proved by another witness, that in the winter of 1847, defendant offered to purchase from the plaintiff the said negro and some children, and to give for them a note endorsed by his mother-in-law; that plaintiff was willing to sell to him at

the price he (the plaintiff) fixed, but no sale was made. The defendant then proved by Burgess, a competent witness, that he was present at the beginning of the interview between Connell and defendant; that Connell handed defendant a note, which the latter looked at, but witness did not hear it read; that before any conversation passed between the parties, Connell stated that he had purchased the negro woman from the plaintiff for his sister in Washington. The witness Connell further proved, that he made the statement of purchase to induce the defendant to deliver up the negro, but that in fact he had not purchased her. Defendant further proved by Brown, that on Sunday morning in August 1847, plaintiff came to witness and stated to him, that he and Connell, on the Friday before, had run the woman off from Buel's, and wanted him to help to catch her, and that he was afraid Ann was so frightened she would not come back again; and he further stated, that he had let his sister-in-law have her in order to enable him to complete his purchase for some land. Upon this evidence the defendant offered four prayers:

1st. If the jury find that at the time the refusal to deliver the negro was made by defendant, Connell professed to be the owner of her, and as such was dealt with by defendant, then, though they find that defendant refused to deliver the negro to Connell, he claiming ownership of her, it is no such evidence of demand and refusal as to entitle the plaintiff to a verdict.

2nd. Though they find a demand was made in August 1847, by the plaintiff, and the refusal of the defendant to deliver the negro up, yet if they also find that afterwards plaintiff attempted to take possession of her, and that without any agency on the part of defendant, she escaped and ran away, and after such running away the plaintiff advertised her as his slave, offering a reward for her recapture, then the plaintiff is not entitled to recover upon the ground of such demand and refusal.

3rd. This prayer is in substance the same as the first.

4th. That upon the whole evidence, there is no such proof

of a conversion on the part of the defendant as will entitle the plaintiff to a verdict.

The court, (Crain, J.,) refused to grant these prayers, and the defendant excepted, and the verdict and judgment being against him, appealed to this court.

This cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

*Digges* and *Causin* for the appellant, argued for a reversal.

1st. To constitute a conversion, by evidence, of demand and refusal, the demand must be made by the party entitled to the property at the time, and the refusal must be explicit. The refusal to deliver to Connell, who claimed to be the owner at the time, cannot be resorted to to sustain this action by a third party claiming title. It is undoubted law, that the demand should be made by a party owning title at the time it is made. *Brown on Actions at Law*, 315, 316. Here the demand was made by Connell, the agent in his own right, and not as agent of the plaintiff, who, in fact, never demanded that the negro should be delivered up to him. Buel never refused to deliver to the plaintiff, but only to Connell, who claimed to be the owner. If Connell was in fact the owner, Pumphrey could not have maintained the action. 4 *Bing.*, 106. *Steph., N. P.*, 2684, 2685. 3 *Bouvier's Institutes*, 678, 679. 4 *Esp.*, 156. 1 *Esp.*, 83. 5 *Barn. & Ald.*, 247. A mere demand and refusal is not always evidence of conversion, there must be an explicit refusal with knowledge of the demand of the plaintiff.

2nd. If any conversion could be inferred from such demand and refusal, all right accruing therefrom was waived by the attempt of the plaintiff to acquire possession of the negro after such demand, and treating himself as the owner having the right to recapture the property. 20 *Pick.*, 90.

3rd. Demand and refusal is only *prima facie* evidence of conversion, and is liable to be rebutted, and the evidence of such demand and refusal as is stated in the exceptions, was not

sufficient to authorise the jury to find the fact of conversion. Where there is a special verdict that there was a demand and refusal, there can be no judgment thereon. *Buller, N. P.*, 44. 2 *Bos. and Pul.*, 464, and cases there cited. 2 *Mod.*, 245. 3 *Har. & John.*, 116. 4 *H. & McH.*, 214. The sufficiency in law of evidence is a question for the court—the sufficiency in fact a question for the jury. 7 *G. & J.*, 29. 3 *H. & J.*, 116, 119. What act, when proved, will amount to a conversion, is a question of law for the court. 3 *Steph.*, *N. P.*, 2704. The conversion is the gist of the action, and if the loss of the property was occasioned by the plaintiff's own act he cannot hold the defendant responsible. Connell demanded not only the woman, but her and her child, and there is no evidence that the child ever belonged to the plaintiff. Where more is demanded than the party has a right to, a general refusal will not prove a conversion. *Brown on Actions at Law*, 315.

4th. A refusal must be so explicit as to show that the party intended to convert the property to his own use. There must be no qualification of the refusal. 5 *New Hamp.*, 275. 20 *Pick.*, 90. A demand and refusal is no evidence, if it appears that the party never converted the property. Here, so far from a conversion, the plaintiff even treats with defendant for a sale of the negro to him.

*Thos. F. Bowie* for the appellee, argued for an affirmance.

It is well settled, that the plaintiff may make the demand by an agent. *Brown on Actions at Law*, 442. Here the agent showed his power of attorney, and read the order from the owner to deliver up the negro to the agent, the person who made the demand. The agency is established beyond doubt, and the refusal was not based on the ground, that the defendant doubted the authority of the agent to receive, but from an aversion to slavery as a system. The agent transcended his power and professed to be the owner, but he committed no fraud, and the refusal was not based on *bona fide* doubts of the defendant as to the authority of the agent, and

34 v.2

Buel *vs.* Pumphrey.

he cannot shelter himself under that class of cases which protect defendants who have such doubts.

The refusal here was general, both to the agent as such, and to every other person, which is sufficient to support *trover*. 5 *M. & Sel.*, 105. 3 *Stephens, N. P.*, 2686.

No demand and refusal is necessary where there has been a tortious taking and conversion; it is only when the possession was at first legal, and the holding afterwards tortious that demand and refusal is necessary. There are two kinds of conversion, one conversion in point of fact, and where this can be shown demand and refusal need not be shown; the other, a conversion in law, which will also maintain *trover*, as where a party withholds property which belongs to another, which is *per se* conversion. *Brown on Actions at Law*, 314. *Steph., N. P.*, 2684, 2688, *note A.* 10 *Johns.*, 256. 5 *Cowen*, 323. 7 *Johns.*, 256.

If a person having power to deliver, detain, and refuse to deliver, it is conversion. 1 *Camp.*, 439. 3 *Starkie on Ev.*, 1156, 1161. 3 *Wend.*, 406. 10 *Wend.*, 589. 15 *Johns.*, 431. 5 *M. & Sel.*, 105. A conversion consists of any wrongful act which deprives a party of his property. 3 *Barn. & Ald.*, 685. *Buller's N. P.*, 45. 2 *H. & J.*, 347.

Again the assertion of the plaintiff's right over the negro three days after the conversion was made and the right of action in *trover* accrued, has nothing to do with that action. The attempt to gain possession afterwards, but before suit brought, could not prejudice his right to an action of *trover*. Even if he had recovered the negro or brought replevin he could still have maintained *trover*. *Steph., N. P.*, 2715. 8 *Cowen*, 43. 4 *Rawle*, 285.

The 4th prayer is too general, 9 *Gill*, 461. It brings up no point. But if the court were right in refusing the other prayers, they were unquestionably right in refusing this, because they had decided the question before.

LE GRAND, C. J., delivered the opinion of the court.

This is an action of *trover* instituted to recover the value of

a negro woman. The plaintiff, after having proved property in the woman, proved that his agent, in August 1847, went to the residence of the defendant *with an order* demanding that the woman should be delivered to him as agent of the plaintiff; that the defendant said at first, that the plaintiff had the right to take her away at any time, but afterwards (he in the meantime having had a conversation with his wife,) refused to deliver her up, saying, that if he, the "defendant did not get her she should never be of service to Pumphrey, (the plaintiff,) or any one else." It also appears from the testimony at the time of the presentation of the order of the plaintiff to the defendant, the agent told the defendant he had purchased the woman for his sister-in-law, who resided in Washington. It also was given in evidence, that some days after the interview of the agent with the defendant, the plaintiff went to the residence of the defendant to get the woman, but that she made her escape, and that he subsequently advertised her.

On this state of facts the defendant presented to the county court four prayers, all of which were rejected, and it is from this refusal of the court that the appeal has been taken.

The first and third prayers are, in substance, the same, and present the same question. They ask the court to instruct the jury, that although they may find a demand and refusal, yet such demand and refusal are insufficient if the jury should also find, that the agent represented himself as owner of the woman, *and as such was dealt* with by the defendant.

It appears from the testimony of the agent, that he carried with him an order of the plaintiff to the defendant to deliver up the woman, and from the testimony of the witness, Burgess, that he was present at the beginning of the interview between the agent and defendant, *and that the agent handed a paper to the defendant, at which the latter looked.* It is clear from this evidence, that the defendant was duly notified, in writing, of the demand of the plaintiff. At all events, these circumstances were sufficient to justify the jury in finding the fact of a demand by and on behalf of the plaintiff. What-

ever may have been the representations of the agent, it is, on the evidence, beyond all dispute, that in point of fact, he had not purchased the woman.

The ground on which the defendant's counsel rest these prayers is, that the demand should have been made on behalf of the plaintiff, whereas, they insist, the evidence authorised the jury in finding that the demand was made on behalf of the agent, who had, during a part of the conversation, said, he had purchased the woman from the plaintiff.

It is undoubtedly true, that if the bailor sell during a bailment, the purchaser, and not the bailor, is the party after sale, to demand the goods of the baileee, and on refusal to bring trover. 4 *Bingham*, 106, (13 *Eng. Com. Law*, 362.)

But it is equally clear, if goods be sold, and before they are delivered they come into the possession of another who refuses, on demand, to deliver them up, either to the purchaser or seller, that such refusal, on a rescinding of the contract of sale, will enable the vendor to maintain *trover*. *Pattison vs. Robinson and others*, 5 *Maule and Selwyn's Rep.*, 105.

In the case just referred to, the person in whose possession the goods were, on demand, informed the parties, "he would not deliver the goods to any person whatsoever," which, in this particular, is precisely the case now before the court. And in that case, Lord Ellenborough said, that after such a declaration it must be taken, that the defendant meant to give a refusal both to seller and purchaser, so far as they were concerned, and resembled, therefore, the case where a party declares beforehand, that if a tender is made to him he will not accept it, which dispenses with the necessity of a formal tender. He further observed, that he did not think it necessary to inquire whether the declaration of the defendant might not be considered as a continuing conversion, because there was at the time, a conversion to the several parties then interested, by a refusal to give effect to their contract; that there was no objection to the title of the one party to sell, and of the other to purchase, *and therefore quoad them*, the refusal amounted to a conversion.

This being so, it is wholly immaterial whether the defendant believed the woman still to be the property of the plaintiff or of the agent who presented the order for her delivery. The manner of his refusal, to use the language of the case we have last referrred to, *"enured for all purposes to the one party and the other."* We concur with the county court in the rejection of these prayers.

The fourth prayer is disposed of by the same reasoning, for it is but a demurrer to the sufficiency of the evidence to establish a conversion of the property.

The third prayer rests upon the ground of waiver, which is deduced from the facts, if the jury should find them, of the plaintiff after the demand endeavoring to take possession of the negro, her escape, and his subsequently offerring a reward for her apprehension.

We have already said, that the refusal of the defendant was a conversion from the time it was made.

There is no question presented to us in regard to the damages, and therefore the case in 20 *Pick.*, 93, can have no bearing on the matter before the court. In that case, the court however recognized the doctrine, that where goods wrongfully converted are afterwards *returned*, trover will still lie, though if the goods were returned speedily and in as good plight as when taken, the damages would be merely *nominal*. The prayer makes no question as to the *amount* of damages, but goes to defeat the right of action. We think the county court did right in rejecting it.

*Judgment affirmed.*