EDMOND H. JOHNSON, Trustee, et al. *v.* LeROY
K. WHEELER et al.
[No. 40, April Term, 1938.]

*Decided May 26th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Edmond H. Johnson,* with whom were *William H. Scott* and *Johnson & Johnson* on the brief, for the appellants.

*William G. Kerbin, Jr.,* and *L. Paul Ewell,* for the appellees.

JOHNSON, J., delivered the opinion of the Court.

By this appeal from two decrees passed by the Circuit Court for Worcester County, in equity, two questions are presented. The first relates to the correctness of the chancellor's action in overruling appellant's demurrer to the bill of complaint, and the second concerns the propriety of the decrees under the facts contained in the record.

The suit had its origin under the following circumstances: On September 19th, 1936, LeRoy K. Wheeler and Magdalene S. Wheeler, his wife, of Sussex County, Delaware, executed unto Samuel J. Ayres, of Worcester County, Maryland, a purchase money mortgage, to secure the payment of $6,000, with interest, within one year.

The security afforded by the mortgage, in addition to a two hundred and thirteen acre farm in Worcester County, was certain farming equipment, consisting of two tractors, two sets of tractor discs, a tractor corn cultivator and planter, corn husker and shredder, and McCormick Combine. The mortgagors, who lived upon the farm, planted it in corn in 1937, and in the fall of that year, the mortgage having become payable, they apparently became discouraged and on October 1st returned to Delaware. They did not, however, take with them the personalty covered by the mortgage, nor the corn which they had grown upon the property during the year, all of this, with the exception of a small amount they had sold to secure money with which to relocate one of the tenant houses on the farm, being left in the field unharvested. They were desirous to reconvey the farm to Ayres and secure the release of the personal property included in the mortgage, and accordingly conferred with him on two occasions concerning the matter. The final conference, on October 20th, resulted in Ayres giving Wheeler a letter on that date for delivery to the mortgagee's counsel in Snow Hill, which read as follows:

"Dear Sir:—

"I have decided to take the farm off Mr. Wheeler's hands & let him have the machinery back viz:

 I Oliver tractor
 1 Set Oliver plows
 1 Set Oliver disks
 1 two row corn planter
 1 Rotary hoe
 1 husker & threader
 1 two row cultivator

"Will you please write another deed & cost of same to be paid by Mr. Wheeler. Also Mr. Wheeler to pay taxes on the farm to date.

"Yours truly,

 "Samuel J. Ayres.

"P. S.

"Soon as Mr. Wheeler signs farm over to me with taxes

paid to date I am then to release Mr. Wheeler of the mortgage & note of $6000.00

"S. J. Ayres.

"Mr. Wheeler & I will arrange about crop affair."

. On the same day this letter was delivered to counsel, who thereupon prepared and delivered to Wheeler a deed for execution by himself and wife. The day following, Wheeler returned to the office of the attorney with the executed deed, but when making inquiry as to the taxes and expenses incident to the transfer of the property, he was informed by the mortgagee's counsel that the mortgagee had changed his mind. He again conferred with Ayres, but the latter refused to reconsider taking back the farm, and stated he intended to foreclose the mortgage. Wheeler returned to his home in Delaware, and five days later the mortgage was filed for foreclosure, the real and personal property described therein having been advertised by Edmond H. Johnson, the trustee named in the mortgage, for sale by public auction on November 20th. Wheeler and wife thereupon filed their bill of complaint in that proceeding against the trustee and the mortgagee, in which they alleged (a) the execution of their bill obligatory for $6000, payable in one year, with interest; (b) the execution of the mortgage as security therefor upon the real estate and farm equipment; (c) that during September, 1937, they entered into a verbal agreement with the mortgagee to reconvey the real estate described in the mortgage, and to pay the taxes against the property, as well as all expenses incident to the reconveyance, to vacate the premises and leave all corn upon the same with the exception of fifteen acres, the corn so left estimated to be three thousand bushels, in consideration of which Ayres was to release the mortgage indebtedness and permit them to remove from the premises the farm equipment; (d) the compliance by them with said agreement, the tender of a deed to Ayres for the property and an offer to pay the taxes due thereon, as well as expenses occasioned by the transfer, and the refusal of

Ayres to accept the deed, release the mortgage, return the farm equipment and corn reserved under the agreement; (e) that Ayres had caused the property to be advertised for sale on November 20th, and, unless restrained and prohibited from proceeding with the sale, they would be injured and irreparably damaged, and had no adequate remedy at law. The prayers of the bill were (1) for an order restraining the mortgagee and trustee from exposing the property for sale; (2) for enjoining them from collecting the mortgage until the plaintiffs' rights had been adjudicated, and (3) for general relief.

Appellant's argument in support of the demurrer to the bill is founded on section 16 of article 66 of the Code, providing that "No injunction shall be granted to stay any sale * * * unless such party shall on oath allege that the mortgage debt and all interest due thereon has been fully paid, or that some part of such debt or interest, the amount of which he shall state, has been paid, and that the mortgagee or person acting under him refuses to give credit for such amount, or that some fraud which shall be particularly stated in the bill or petition for injunction was used by such mortgagee, or with his knowledge, in obtaining the mortgage." He states the familiar principle that the jurisdiction of the court depends upon the allegations of the bill, and since it is nowhere alleged that the mortgage indebtedness and interest thereon have been paid, nor that some part of it for which the mortgagee refuses to give credit has been paid, there being no sufficient fraud alleged, such omissions render the bill invalid as against demurrer.

Conceding that no such fraud as is contemplated by the above quoted section is here alleged, it does not follow that the bill is defective. While it contains no allegation that the mortgage and interest due thereon were paid in cash, no such requirement is found in the statute. As said by this court in *Howard v. Hobbs*, 125 Md. 636, 643, 94 A. 318, 322, "* * * in our judgment the mortgage and note can be held to be satisfied, either

on the ground that there was a perfected gift of the debt as shown by the agreement, or that there was a contract for a valuable consideration that the loan should be extinguished at the death of Mrs. Jones, if the Howards did all that they covenanted to do." That decision was followed by *Green v. Redmond,* 132 Md. 166, 103 A. 431, where, although the mortgage had not been paid in cash, it had become inoperative by reason of the mortgagors' observance of an agreement providing for its liquidation and cancellation. There, as here, it was contended that its collection could not be enjoined because of the above quoted provision, and in disposing of that contention, this court said (page 433):

"The point was raised that the petition for the injunction to prevent a sale under the mortgage did not, as required by Code, art. 66, sec. 16, allege that the mortgage and all interest due thereon had been fully paid, and it is further contended that the bond filed as a prerequisite to the issuance of the preliminary injunction was not in the form prescribed by law. As the petition alleges that the mortgage debt and interest were fully satisfied, under the terms of the agreement, and as a final decree for a permanent injunction on that ground is the subject of this appeal, the objections just stated are without force."

See, also, 3 *Jones on Mortgages* (8th Ed.) secs. 1844 and 2334.

Since in this case the mortgagors allege the existence of an agreement between them and the mortgagee, based upon a valuable consideration, entitling them to a release of the mortgage in question, and which agreement they have, except to the extent prevented by the mortgagee, fully performed, this in our judgment is sufficiently equivalent to an allegation of having paid the mortgage in full, and in that respect gratifies the quoted provisions of the section.

Wheeler also testified that on October 21st, when he delivered the executed deed to counsel for the mortgagee, he was prepared to pay the taxes and costs of

transferring the title, and took out his pocketbook for this purpose, when the attorney to whom he had been sent by Ayres informed him that the matter had been called off and suggested that he again see Ayres. Subsequently, during the taking of testimony on defendant's motion to dissolve the preliminary injunction, which hearing was stipulated to be final under the bill and answer, Wheeler produced sufficient money to pay such items, but it was not accepted by the mortgagee.

The principal difference between Wheeler's version of the agreement and that of the mortgagee relates to the quantity of corn Ayres was to receive. He and Wheeler agreed that it covered one hundred and twenty-five acres of the farm land and Wheeler estimated the quantity it would husk at three thousand bushels. Ayres contended that this quantity was a material element which influenced him in agreeing to take back the property, but after looking over the fields he decided the corn would not husk this number of bushels, and for this reason concluded not to carry out the agreement. However, it is to be noted that Ayres himself subsequently caused the corn to be husked and placed in cribs upon the farm, yet even at the time of taking testimony he had never had it measured, but relied solely upon the statements of certain laborers who estimated that the quantity was far below three thousand bushels. The chancellor concluded that the quantity of corn was merely an estimate of both parties, and this to us seems reasonable under all the circumstances. Then, too, Ayres, as well as Wheeler, had an equal opportunity of estimating the amount at the time of their agreement. Ayres also claimed that a part of the corn had been removed from the premises but, as previously stated, this quantity, which was sold for $24.90, was used to relocate improvements upon the property, and had been husked antecedent to the date of their agreement, and could not, therefore, have been included in the corn Ayres expected to receive. The chancellor rejected Wheeler's claim for fifteen acres of the corn and awarded the total acreage

to Ayres, and we feel the latter in this respect was treated liberally.

By the first decree, dated February 25th, 1938, it was provided (a) that Wheeler should, on or before March 3rd, at his own expense, cause the executed deed for the property to be recorded among the Land Records of Worcester County, Maryland, pay mortgagee's counsel for its preparation, and also pay the accrued state and county taxes upon the property: (b) that, upon compliance by him with those requirements, he was entitled to receive, free of the mortgage and mortgage indebtedness, the farm equipment, and Ayres was entitled to receive all corn upon the farm, in addition to the real estate so to be conveyed; (c) that Ayres should, upon compliance by Wheeler with the preceding requirements, release the mortgage and deliver to Wheeler the mortgage note secured thereby. The injunction previously issued was continued for a period of thirty days, and action by the court upon the motion to dissolve was reserved, as was also the matter of making the injunction permanent.

Wheeler, on March 3rd, at his own expense, caused the deed to be placed upon record, paid mortgagee's counsel for its preparation, and also paid the state and county taxes, for which items he exhibited receipts, and the chancellor on the following day passed a second decree, providing that he was entitled to receive the farm equipment free from the mortgage and mortgage debt, and was also entitled to the return of the mortgage bill obligatory of himself and wife of $6000.00; that Ayres was entitled to receive all corn upon the farm mentioned in the proceedings, in addition to the real estate which had been conveyed to him, overruled the motion to dissolve, and made perpetual the injunction previously granted, restraining the mortgagee and trustee from foreclosing the mortgage.

It is suggested that, since the contract set out in the bill of complaint is to the effect that subsequent to its formation Wheeler vacated the property and surrendered

possession, whereas it is shown by the evidence that he and his wife had previously left the farm, is such a variance as to disentitle Wheeler to the relief sought, but the cases relied upon in support of that contention do not, we feel, go to that extent. The contention is also made that, since Wheeler at the time he presented the deed to counsel did not actually remove the money from his pocketbook and offer the same in payment of taxes and expenses incident to the transfer, there was no sufficient tender. It is not suggested that, had he actually counted out the money it would have been accepted, nor is it denied that when he was preparing to tender the money he was dissuaded because of the statement that nothing further could be done, because Ayres had changed his mind. Nor is it controverted that, during the hearing on the motion, Wheeler actually displayed and offered the correct amount of money for those items, and that this was not accepted.

This court in *Chicora Fertilizer Co. v. Dunan*, 91 Md. 144, at page 163, 46 A. 347, held that technical rules governing pleas of tender in actions at law were inapplicable in equity, and an allegation to the effect that the purchaser of real estate was ready, able and willing to comply with his contract was in equity a sufficient tender.

And in *First Mortgage Bond Homestead Association v. Nelson*, 151 Md. 181, 135 A. 139, it was said that although a certified check was not actual money and could not be used in making a strict legal tender, yet a tender so made by one seeking to enjoin a mortgage sale was immaterial if at the hearing he asked permission to pay into court the actual cash due.

In *Buel v. Pumphrey*, 2 Md. 261, 268, it was held that the previous declaration of a party to the effect that if tender were made to him he would not accept it dispensed with a formal tender.

In view of these holdings, it cannot be said, upon the facts before us, that Wheeler's conduct did not amount in equity to a sufficient tender of the money due for the items mentioned.

Since we are of the opinion that the contract between Ayres and Wheeler referred to in the bill of complaint was satisfactorily established by the evidence, it follows that the decrees appealed from were correct, and should be affirmed.

*Decrees affirmed, with costs.*