511 A.2d 535

**John PLATSIS et al.**

v.

**George DIAFOKERIS.**

**No. 1436, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

July 9, 1986.

Peter A. Prevas and Peter A. Prevas (Prevas & Prevas, on brief), Baltimore, for appellant.

Renee L. Menasche (Barry M. Cohen, Cohen, Dwin & Garfield, P.A., on brief), Baltimore, for appellee.

Argued before ALPERT and ROBERT M. BELL, JJ., and JAMES C. MORTON, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ROBERT M. BELL, Judge.

John and Mary Platsis, appellants, and George Diafoker-is, appellee, executed a Bill of Sale and Agreement as well as a Promissory Note in connection with appellee's sale of his interest in Marie's Carry-Out in Towson, a pizza/submarine business. The agreement and the note provided that the sale price of $29,000.00 was to be paid to appellee as follows:

(a) Four Thousand Dollars ($4,000.00) shall be paid by December 1, 1982.

(b) The Twenty-five Thousand Dollars remaining shall be paid at sixteen percent (16%) interest from July 15, 1981. Said payments to be paid in twenty-four (24) equal installments commencing with the first payment due December 1, 1982 and for twenty-four (24) consecutive months thereafter in equal installments of One Thousand Four Hundred Seventeen Dollars Forty-one Cents ($1,417.41).

(c) That the parties acknowledge that the interest at sixteen percent (16%) is based upon thirty-six (36) months but payable in twenty-four (24) installments. That the said percent of the previous year has been proportionally added to the following twenty-four months.

In addition, they set forth "events or conditions" constituting default under the agreement and note and, in the event of default, appellants promised to "pay reasonable attorney's fees not to exceed 20 percent, legal expense and other expenses incurred by Seller in pursuing his rights and remedies under the law . . .". The note, which provided for prepayment in full or in part, without penalty, at any time, detailed appellee's remedy in the event of a default. Appellants paid the $4,000.00 required under the agreement and note on the day that they were executed.

After making 14 monthly payments, appellants, desiring to prepay the note, consulted with an attorney who computed the amount due. They then delivered to appellee's wife a check in the amount of $8,333.36, marked "Dept [sic] paid off" as full payment of the unpaid balance due on the note, including interest.

Appellee, upon receipt of the check, consulted with his accountant, who advised him that the check was for an insufficient amount to cover the balance due and owing on the note. Having determined that the check was for an insufficient amount, appellee caused a letter to that effect to be forwarded to appellants:

Mr. Diafokeris received from you a check in the amount of $8,333.36. Please be advised, that as a payoff figure on the mortgage, it is incorrect, and there is a substantial balance due.

The balance on your mortgage, after the March 1984 payment, was $10,751.70. To verify this balance, please find enclosed a mortgage amortization on the original $29,000.00 at 16% yearly interest, payable in 24 months starting in December 1982, in monthly payments of $1,417.41.

I have advised Mr. Diafokeris not to cash this check, because it is incorrect. You are hereby requested, to immediately issue Mr. Diafokeris a check in the amount of $11,038.03, which consists of the balance of the mortgage in the amount of $10,751.70, interest on the mortgage for April in the amount of $143.36, payment shortgages in the amount of $1.23, and two months of late charges in the amount of $141.74.

Failure to remit this check within ten days of this date, or the monthly payment due (which is also considered late) will result in your defaulting the loan.

Upon receipt of the letter, appellants consulted a second attorney who advised them that interest should be payable only on $25,000.00 of principal, not $29,000.00, a position which appellants maintained throughout the proceedings below. Despite communication between appellants' counsel and appellee's accountant, the matter was not resolved.

Appellee filed a Nar and Confession of Judgment on the note. The issue at trial was summarized by the trial court thusly:

The note in question is for $29,000.00, with interest at 16% per annum, and provides for payment in 24 months at $1,417.41 per month. It also provided for a payment of $4,000.00 on the very day of the note. Evidence presented at the hearing established that the cost of the business transfer was $29,000.00, but that Platsis agreed also to pay Diafokeris one year's interest on $25,000.00 at 16%, which Diafokeris has incurred. This extra amount was $4,000.00, and there was conflict in testimony as to whether interest was payable on this sum.

In short, the issue resolved itself into one of whether it was the intention of the parties that interest be paid on $29,-000.00 or $25,000.00. Noting an ambiguity in the agreement and the note and having heard the testimony as to the parties' intention, the trial judge, construing "any ambiguity ... against [appellee], whose agents prepared the documents", concluded that interest was only to be paid

upon the reduced principal amount of $25,000.00.  He therefore accepted the calculations offered by appellants "in preference to those offered by [appellee]".[1]

Another issue at trial was whether the tender of an amount, which was less than the amount due,[2] but which appellants, in good faith, thought was the correct amount, coupled with an excessive demand by appellee, excused appellants from liability for interest from the date of tender, costs and attorney's fees.  The trial court, noting that the parties did not agree on the balance due, but that the tendered amount was less than actually due, ruled:

> This is not a case where a creditor, having sole possession of information as to the balance due, neglects or refuses to disclose that information to the debtor.  The situation here is that each party is starting from a different base, and, therefore, no agreement will be reached as to the balance due until the conflict as to the base debt subject to interest is resolved.

> Based on these findings of fact, the tender did not stop interest on the debt.

The court thereupon assessed against appellants interest accounting from the date of tender, counsel fees of 15%,[3] computed on the $10,207.26 found to be due as of the date of tender, and costs.

Appellants appeal from the judgment thus entered, raising only one question:

---

1.  Subsequent to its tender of the $8,333.36 check, appellants, in consultation with an accountant determined the actual amount of principal and interest due as of the date of tender to be $10,207.36.  It is this amount that the court accepted as the amount due as of that date.

2.  The amount tendered was less than the amount due even under appellants' interpretation of the note.

3.  Although not raised on appeal, we find it interesting to note that the record is devoid of any indication that a hearing was conducted by the trial judge to determine the reasonableness of the attorney's fees awarded.  *See Meyer v. Gyro Transport Systems, Inc.,* 263 Md. 518, 531, 283 A.2d 608 (1971).

Did the trial court err in awarding creditor (plaintiff appellee) interest on the unpaid balance of the promissory note from the date of tender and in awarding creditor court costs and attorney's fees where creditor had made an excessive demand for the amount due on the note at the time of tender by debtor?

For reasons that will appear hereinafter, we will affirm.

■ We quite recently defined "tender" as "an offer to perform a condition or obligation, coupled with the present ability of immediate performance, so that if it were not for the refusal of cooperation by the party to whom tender is made, the condition or obligation would be immediately satisfied." *Chesapeake Bay Distributing Company v. Buck Distributing Company, Inc.*, 60 Md.App. 210, 214, 481 A.2d 1156 (1984), quoting 15 Williston, *A Treatise on the Law of Contracts*, § 1808 (3d ed. 1972). To be valid and effective, *i.e.*, to relieve the debtor of the obligation to pay costs, interest and attorney's fees after the date of tender, a tender "must be either in the exact amount due, or a larger amount without requiring the making of change", 5 A. Corbin, *Treatise on Contracts*, § 1235 (1964). *See James v. Hogan*, 154 Neb. 306, 47 N.W.2d 847, 853 (1951); *Delashmutt v. Keller*, 43 Or.App. 83, 602 P.2d 312, 314 (1979), and unconditional. 15 Williston, *supra*, at § 814; *Mayor and City Council of Baltimore v. Hook*, 62 Md. 371, 379 (1884); *Heighe v. Sale of Real Estate*, 164 Md. 259, 265, 164 A. 671 (1933); *First National Bank of Davis v. Britton*, 94 P.2d 896, 898 (Okla.1939); *Ford Motor Credit Company v. Goings*, 527 P.2d 603, 607 (1974). Thus, a tender which contains a condition "which would prejudice the creditor's right [, *i.e.*, one] that a payment shall be taken in full discharge", is conditional. 15 Williston, *supra*.

■ The necessity of making tender may be excused. *Chesapeake Bay Distributing Company v. Buck Distributing Company, Inc., supra*, 60 Md.App. at 214, 481 A.2d 1156. This occurs when "claimant dispense[s] with its production, by express declaration or equivalent act, as if a party declare before hand that a tender will not be accepted

...", *Shannon v. Howard Mutual Building Association of Baltimore,* 36 Md. 383, 392 (1872), *see Buel v. Pumphrey,* 2 Md. 261, 268 (1852); *Johnson v. Wheeler,* 174 Md. 531, 539, 199 A. 502 (1938), or the creditor makes clear to the debtor that tender would be a futile gesture. 15 Williston, *supra* at § 1819; *Chesapeake Bay Distributing Company v. Buck Distributing Company, Inc., supra,* 60 Md.App. at 214, 481 A.2d 1156.

Appellants, first of all, concede that their tender was insufficient both as to amount and because it was conditional. Nevertheless, they assert:

> ... [W]here debtor first makes a tender ... and creditor rejects, clearly stating that nothing less than an excessive amount would be accepted as a re-tender, debtor ... is excused from re-tendering the actual balance, since this would have again been refused by creditor, and the law does not require a debtor to perform a futile gesture.

It is thus clear that the thrust of appellants' argument is that where a creditor makes an excessive demand upon his debtor,

> [i]t is irrelevant that appellant, in the position of a debtor here, did not tender to appellee the proper amount due, for the rule is that tender is excused where the creditor has clearly indicated that he is unwilling to accept what is due in discharge of the debt.

*Warrior Constructors, Inc. v. Small Business Investment Company of Houston,* 536 S.W.2d 382, 386 (Tex.Civ.App. 1976). *See Collingsworth v. King,* 276 S.W.2d 556 (Tex. Civ.App.), *rev'd* 283 S.W.2d 30 (Tex.1955); *Kinzbach Tool Company v. Corbett-Wallace Co.,* 138 Tex. 565, 160 S.W.2d 509 (1942); *Agostini v. Colonial Trust Company,* 28 Del.Ch. 30, 36 A.2d 33, *reh'g granted,* 28 Del.Ch. 184, 39 A.2d 406 (1944). Appellants urge that appellee's letter to them setting forth the amount claimed was such an excessive demand and clearly indicated that appellee would accept nothing less than the amount set forth in that letter in satisfaction of the debt. This, they say, comports with the above-cited cases, on which they rely.

Appellee rejects appellants' reasoning. He says that the out-of-state cases relied upon by appellants are distinguishable from the fact pattern *sub judice* in that

[t]he central theme in each of the foregoing ... cases is that the Debtor either delivered the correct balance due on his obligation or that the Creditor would have rejected the delivery even if the correct balance due had been delivered. That theme is not applicable to the within appeal. That is, the Debtors never delivered the correct balance due to the Creditor and the Creditor never stated that he would have rejected the Debtors' payment had it been in the correct amount. In fact the Creditor's conduct should have led the Debtors to the opposite conclusion.

In *Warrior Constructors, Inc., supra,* the guarantor, Warrior, who was liable only for $50,000.00 of a $60,000.00 debt, was assessed interest and attorney's fees after the principal debtor had defaulted. It appealed, claiming that it was relieved of such obligations by virtue of the excessive demand made by the creditor. When the total principal amount due was $35,000.00, but the portion attributable to Warrior, only $25,000.00, the creditor, in three letters addressed to Warrior, had stated that "no less than complete payment of the total unpaid balance of principal, interest and attorney's fees will be accepted ...". The Texas Court held that the trial court erred in assessing interest and attorney's fees against Warrior prior to the date of judgment. It reasoned:

Given the unqualified nature of appellee's demands, appellant could reasonably have assumed that a tender of $25,000.00 in principal would not be accepted. Therefore, appellant was excused from making such a useless tender. Indeed, in such a situation the effect is the same as if appellant had actually tendered to appellee the correct amount due.

*Id.* 536 S.W.2d at 386.

The court also noted that "appellee does not argue that appellant's failure to pay or tender the correct amount of

lump sum was due to any other reason than the excessiveness of appellee's demand." *Id.* at 386.

In *Kinzbach Tool Company, supra,* the debtor tendered the amount due after deductions to which he was entitled had been made. The creditor absolutely rejected the tendered amount and, instead demanded the amount tendered plus the deducted amounts as full payment of an installment then due. The Court observed, "[i]t is therefore evident that it would have been useless for Kinzbach to make any tender of payment on any subsequent installment due on this contract, with Turner's commission thereon deducted therefrom." *Id.* 160 S.W.2d at 514. Thus, it held that the creditor's conduct excused tender of subsequent installments.

In *Collingsworth v. King, supra,* the Court reversed the intermediate appellate court's determination that the debtor remained liable for interest and attorney's fees from the date of tender because the tender made was conditional. I did agree, however, that the tender was nevertheless sufficient where the creditor rejected the tender of an amount less than that due, not on the basis of insufficiency of amount, but rather, because of its excessive demand (the creditor demanded interest in excess of that called for in the note and attorney's fees). *Agostini, supra,* presents yet another aspect of the same issue. There, the debtor, in good faith, tendered an amount less than that actually due. The creditor, on the other hand, demanded an amount greater than due. The Court found the creditor to be estopped to assert at trial that the tender was insufficient. It said:

> The complainants, in good faith, tendered a sum less than the amount due, in payment of indebtedness. The difference was relatively insubstantial, and complainants were at all times in a position to remedy the defect. Defendant declined the tender giving specific reasons which were insufficient and inconsistent with the actual defect. Complainants aver that defendant's failure to give a sufficient reason induced a failure on their part to correct the

tender. What defendant said was, under the circumstances, calculated to lead a reasonable person to believe that its only reason for declining the tender were those which have been found insufficient [sic]. It is apparent that the defendant would have rejected the tender if the actual defect had not existed. It follows that defendant has waived or is estopped to assert, the present objection to the tender; and that the rights of the parties are the same as though the full amount due had been tendered. *Id.* 39 A.2d at 408.

Finally, *Chesapeake Bay Distributing Company v. Buck Distributing Company, Inc., supra,* is instructive. There, debtor's counsel called the creditor's counsel and expressed his client's "readiness, willingness and ability to pay" the amount of a judgment which had been entered against it. He requested that creditor's counsel advise him how the check should be made out and where it should be sent. Creditor's counsel advised debtor's counsel that his client "planned to take an appeal of the matter", but denied advising debtor's counsel not to send the check. The trial judge found that "[a]lthough [Chesapeake's counsel] did not state expressly that he was rejecting the tender, this Court finds it reasonable that a constructive rejection did occur because of [his] statement that an appeal would be filed." *Id.* 60 Md.App. at 215, 481 A.2d 1156. This Court disagreed and, instead found:

> It is uncontraverted that counsel for Chesapeake did not specifically refuse the check on July 13. The only plausible interpretation of this conversation is that counsel for Buck called to arrange to pay the judgment in order to close the case since the appeal time was about to run. Counsel for Chesapeake perceived this as the reason for the call and put opposing counsel on notice that his client intended to appeal. His intent was not to reject the tender but to treat counsel fairly by notifying him of the status of the case.
>
> Whether Chesapeake would have refused the check on July 13 is purely speculative. It is inconceivable that

Chesapeake would have returned a check in full payment if assured that the appeal would not be affected. It is equally clear that Buck did not intend to make an unconditional payment.

Based on the record before us, we hold the court was clearly erroneous in finding that counsel's statements and actions were "equivalent" to an actual rejection. (footnote omitted).

*Id.,* 60 Md.App. at 216, 481 A.2d 1156. The case was remanded to the trial court for determination whether a valid and effective post trial tender had been made.

■ Turning to the case *sub judice,* our task is to determine whether, under the facts and circumstances, appellants were obliged to retender the full actual amount due on the note, prior to a judicial decision on the issue, in order to avoid liability for costs, interest, and attorney's fees from the date of the original tender. We hold that they were not.

Appellants' only tender was insufficient because it was less than the full amount due on the note and also because it was conditional; it was not, therefore, a valid or effective tender which relieved appellants of liability for costs, interest, or attorney's fees. On the other hand, the amount appellee demanded to discharge fully the note, because based upon a faulty premise, *i.e.* that the note provided for interest computed on a base principal amount of $29,000.00, rather than on $25,000.00 as appellants contended, was greater than that actually due and, as later events proved, was excessive. Furthermore, the demand was firm: appellants' efforts, through counsel, to resolve the dispute met with no success. Moreover, the confluence of the faulty premise, based on an ambiguity in the note drafted by appellee, and the firmness of appellee's reliance on that premise make patent, as the trial judge found, that "no agreement [could] be reached as to the balance due until the conflict as to the base debt subject to interest [was] resolved." We think it apparent from the record that appellee would not have accepted any tender less than the amount of

his demand, not even one in the amount ultimately found by the court to be due. Consequently, in view of the firmness of appellee's demand with regard to what was required to discharge the note it would have been a "futile gesture" for appellants to have tendered even the actual amount due. *See Chesapeake Bay Distributing, supra* 60 Md.App. at 214, 481 A.2d 1156.

Unfortunately for appellants, appellee's letter did more than demand an amount for the full discharge of the note; it demanded, alternatively, that "the monthly payment due" be remitted. Appellee, thus, far from expressing a disinclination to accept less than the full amount necessary to discharge the note, clearly indicated that he was willing to accept the then due monthly payment and, by implication, all subsequent ones as well. It cannot be said, therefore, that the tender of the monthly payments as they came due would have been a "futile gesture" or would not have been accepted. Such payments would have prevented the note from being declared in default, which, in turn, would have shielded appellants from liability for costs, interest, and attorney's fees. Appellants failed to make the monthly payments when due, an option they retained despite appellee's excessive demand. Thus, the fact that appellee's letter contained a demand for an excessive amount to discharge the note fully, which demand could be construed as stating that nothing less than that necessary for full discharge would be accepted,[4] is under the circumstances, not dispositive. The trial judge properly assessed costs, interest and attorney's fees from the date of default against appellants.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.

---

4. There is, to be sure, no reference in the letter as to how a partial prepayment, if tendered, would have been treated by appellee. The language regarding what must be tendered to prevent default does, however, appear to be unequivocal in its requirement that either the full amount or the monthly payment be remitted.