September 27, 1993

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2293

WHITNEY BROS. CO., ET AL.,
Plaintiffs, Appellees,

v.

DAVID C. SPRAFKIN AND JOAN BARENHOLTZ,
TRUSTEES OF THE BERNARD M. BARENHOLTZ TRUST, ET AL.,
Defendants, Appellants.

ERRATA SHEET

The opinion of this Court issued on September 9, 1993, is
amended as follows:

Page 3, second complete paragraph, line 1, delete
"defendant" and insert "Bernard Barenholtz's (and defendants')
attorney, Samuel M."

Page 3, second complete paragraph, line 2, delete "Bernard"
and insert "Mr."

Page 3, last line, substitute "first" for "third."

Page 13, line 1-2, delete ", one of whom, ironically, was a
director of Whitney Brothers,".

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2293

WHITNEY BROS. CO., ET AL.,

Plaintiffs, Appellees,

v.

DAVID C. SPRAFKIN AND JOAN BARENHOLTZ,
TRUSTEES OF THE BERNARD M. BARENHOLTZ TRUST, ET AL.

Defendants, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Norman H. Stahl, U.S. District Judge]

Before

Torruella, Cyr and Boudin,

Circuit Judges.

Richard B. Couser, with whom James P. Bassett, Cordell A.

Johnston, Orr and Reno, P.A., and Samuel M. Sprafkin, were on

brief for appellants.
James R. Muirhead, with whom Peter D. Anderson, and McLane,

Graf, Raulerson & Middleton, Professional Association, were on

brief for appellees.

September 9, 1993

TORRUELLA, Circuit Judge. Plaintiffs/appellees are

Whitney Brothers Company ("Whitney Brothers") and Griffin M.

Stabler, Whitney Brothers' president, chief executive officer and

director. Defendants/appellants, David C. Sprafkin and Joan

Barenholtz, are the trustees of the Bernard M. Barenholtz Trust,

Whitney Brothers' majority shareholder. Plaintiffs sued to

compel defendants to sell their stock in Whitney Brothers

pursuant to a written buy/sell contract.

After two years of litigation, the district court

ordered the sale at defendants' asking price. In the order, the

district court also held that: (1) plaintiffs were entitled to

prepay the promissory note bearing the sale price; (2) interest

would begin to accrue when plaintiffs execute the note; and (3)

plaintiffs were entitled to attorneys' fees. Defendants appealed

only on the issues of prepayment and interest. Plaintiffs

subsequently moved for attorneys' fees for this appeal. W e

reverse the district court's judgment with respect to prepayment,

affirm with respect to the accrual of interest, and deny

plaintiffs' motion for attorneys' fees on this appeal.

BACKGROUND

Whitney Brothers is a New Hampshire corporation that

produces wooden learning materials. Bernard Barenholtz acquired

62.6% of the company's outstanding shares in 1969. Ten years

later, he transferred these shares to the Bernard M. Barenholtz

Trust (the "Trust") and named himself and defendant David

Sprafkin trustees. Plaintiff Griffin Stabler owns 32.7% of the

-2-

shares, and his son, David Stabler, owns the remaining 4.7%.

On January 27, 1987, Whitney Brothers, the trustees,

and Griffin Stabler executed a written buy/sell agreement. Under

the agreement, Whitney Brothers would buy the Trust's shares

within ninety days of the death of Bernard Barenholtz and buy

Griffin Stabler's shares within ninety days of Stabler's death.

To determine the purchase price, the parties would plug an

agreed-upon appraisal into a formula to determine the purchase

price. If the parties could not agree on an appraisal, they

would each get their own and plug the average into the formula.

The contract also provided for payment by a promissory note, with

monthly installments over ten years at 10% interest per annum.

The agreement did not mention whether prepayment of the note was

permissible.

On February 3, 1987, Bernard Barenholtz's (and

defendants') attorney, Samuel M. Sprafkin wrote a letter (the

"February 3 letter") advising Mr. Barenholtz that: (1) David

Stabler, as a shareholder, should consent to the contract; (2)

the promissory note should be prepayable without penalty; and (3)

Article 4 of the contract should have an additional provision not

relevant to this appeal. Plaintiffs contend, and the district

court found, that after Bernard Barenholtz received the letter,

the parties orally agreed to the prepayment provision.

Barenholtz then placed the letter in a file with the written

contract and David Stabler signed an addendum to the contract

pursuant to Sprafkin's first suggestion.

-3-

When Bernard Barenholtz died, on August 5, 1989, his

daughter, defendant Joan Barenholtz, assumed his trustee

position. Whitney Bros. Co. v. Sprafkin, No. 90-054-S, at 4 (D.

N.H. filed Sept. 30, 1992). A few days later, plaintiff Stabler

and defendant Sprafkin discussed the contract's required stock

sale. Id. One of the parties asked E.F. Greene to update a past

appraisal of Whitney Brothers.1 Id. Sprafkin rejected Greene's

appraisal; Whitney Brothers accepted it. Id. Relying on

Greene's appraisal, Whitney Brothers tendered to defendants a

prepayable promissory note for $1,178,000 for the stock (the

"September 1989 Tender").2 Id. at 4-5.

Instead of responding immediately, defendants secured a

significantly higher appraisal from Alfred Schimmel. Id. They

then rejected Whitney Brothers' tender by letter, without

mentioning the note's prepayment clause. When Stabler learned of

defendants' appraisal, he rejected it as too high.

Ultimately, plaintiffs sued to compel the transfer of

the stock. Ten months later, on December 13, 1990, as part of

their cross-motion for summary judgment, plaintiffs offered to

tender either $1,349,3433 immediately or, if the court found

that the agreement did not permit prepayment, that amount over

1 The parties disagree over who requested the update.

2 Defendants contend that Stabler made the tender knowing that
they did not accept Greene's appraisal and planned to obtain one
of their own.

3 This was the price calculated under the contract by plugging
the average of the two appraisals into the formula.

-4-

ten years at 10% interest (the "December 1990 Tender").

Defendants again rejected the tender. They now contend that they

rejected it because: (1) it omitted $145,000 worth of interest

that had accrued since November 3, 1989, 90 days after the death

of Bernard Barenholtz; and (2) it was invalid because the first

option permitted prepayment, and the second option was

conditioned upon a court judgment that prepayment was prohibited.

In response to the cross-motions for summary judgment,

the district court: (1) ordered defendants to sell their stock;

(2) found that plaintiffs were not entitled to prepay the note;

and (3) decided to hold a trial on the issue of the stock's

price. See Whitney Bros. Co. v. Sprafkin, No. 90-54-S (D.N.H.

filed June 5, 1991).

After the trial, the court issued an order in which it:

(1) required plaintiffs to pay $1,349,343 for the stock; (2)

reconsidered and reversed, sua sponte, its previous order and

ruled that plaintiffs could pay for the stock with a prepayable

promissory note; (3) ruled that interest on the note would begin

to accrue when it was executed, and not before; and (4) awarded

attorneys' fees to plaintiffs based on defendants' bad faith

conduct of the litigation. See Whitney Bros. Co. v. Sprafkin,

No. 90-054-S (D. N.H. filed Sept. 30, 1992). When the court

entered judgment on the order the following day, the court also

awarded prejudgment interest pursuant to N.H. Rev. Stat. Ann.

524:1-b, "if appropriate." Whitney Bros. Co. v. Sprafkin,

No. 1:90-cv-0054-S (D.N.H. filed Oct. 1, 1992) (emphasis added).

-5-

Defendants appeal on only two issues: (1) the

prepayability of the note; and (2) the date from which interest

accrues. In addition, plaintiffs request attorneys' fees for

this appeal.

DISCUSSION

I. PREPAYABILITY

Article 4 of the buy/sell contract provides:

The purchase price . . . shall be paid

with a negotiable promissory note which

shall provide for the payment of the

purchase price in 10 years with interest
at the rate of 10% per annum, principal
and interest payable in 120 equal,
consecutive monthly payments.

(emphasis added). The agreement nowhere mentions prepayment of

the proposed promissory note.

At trial, the district court conditionally allowed

evidence of a subsequent oral agreement permitting prepayment of

the note. Ultimately, the court admitted the evidence, finding

that it was not precluded by the parol evidence rule. In the

same ruling, the court found that the parties indeed entered the

alleged oral agreement.

The court erred in finding the asserted oral agreement

binding on the parties. Article 5 of the written buy/sell

contract prohibits the parties from orally altering or amending

the written contract.4 Under N.H. Rev. Stat. Ann. 382-A:2-

4 Article 5 provides:

This agreement may be altered, amended or
terminated by a writing signed by all of
the shareholders except David G. Stabler,

-6-

209(2), "[a] signed agreement which excludes modification or

rescission except by a signed writing cannot be otherwise

modified or rescinded. . . ." While an attempted modification

can constitute a waiver, that waiver can be retracted absent "a

material change of position in reliance on that waiver." N.H.

Rev. Stat. Ann. 382-A: 2-209(4) and (5). Here, plaintiffs

allege no alteration of their position in reliance on a

prepayment provision. Thus, we can find no binding waiver of

and the Corporation.

Although the Article does not state in mandatory terms that
alterations must be in writing, defendants argue that since

agreements may always be altered by a writing signed by the
parties, the Article must have been intended to exclude oral
modifications. While we do not foreclose other purposes of this
clause, we agree that the purport of the provision is to require
that alterations be in writing.

In addition, plaintiffs never countered defendants' argument
that the Article precludes oral alterations and amendments to the
contract. In response to this argument, plaintiffs, apparently
characterizing the clause as an integration clause, argued that:
(1) such a clause did not mandate a finding that the contract was
totally integrated; (2) the contract was not a total integration;
(3) the February 3 letter "contemplated an extra-contractual
understanding about a term of the agreement," rather than a
variation; and (4) therefore, since the court found an
independent agreement, the court could find the note was
prepayable. This argument ignores defendants' assertion that the
clause prohibits oral alterations of the contract.

At oral argument, when questioned about the prohibition,
plaintiffs' counsel simply argued that the oral agreement was not
a modification because the contract did not mention prepayment.
Counsel did state that Article 5 "supposedly" precludes oral

modification, suggesting a possible disagreement on that
interpretation. However, since defendants raised Article 5 at
the trial level, see Defendants' Objections to Plaintiffs' Cross-

Motion for Summary Judgment at 11; Defendants' Post Trial Brief

at 44-45, and on appeal, Appellants' Brief at 17-19, 21 n.7, we

construe plaintiffs' failure to argue that the Article does not
prohibit oral alteration as a concession that it does.

-7-

Article 5 by defendants.5 Plaintiffs contend that since the

written contract says nothing about prepayment, a subsequent

agreement to allow prepayment does not constitute an alteration

or amendment under Article 5. Rather, they argue that the

agreement was independent of the written contract. Apparently,

the district court agreed. Although the court did not explicitly

address Article 5, it did conclude that a prepayment provision

"does not, by its terms, vary or contradict the terms of the

Agreement. . . ." Whitney Bros. Co., No. 90-054-S (Sept. 30,

1992), at 13.6

We review this determination de novo as it centers

around the interpretation of the language of the written

contract. See In Re SPM Mfg. Corp., 984 F.2d 1305, 1311 (1st

Cir. 1993) (de novo review of bankruptcy court's interpretation

of unambiguous contract); Hermes Automation Technology, Inc. v.

Hyundai Elec. Ind., 915 F.2d 739, 745 (1st Cir. 1990)

(interpretation of plain language of release agreement was

question of law warranting de novo review).

On review, we find that the district court erred in its

5 We apply 2-209 by analogy. Although that section does not
apply to the sale of securities, the purpose behind the rule --
"to protect against false allegations of oral modifications" --
equally applies to these contracts. See 2-209, comment 3.

6 This finding reversed the district court's first order which
found that "[t]he prepayment term is inconsistent with the plain
meaning of the Agreement, which clearly provides for payment over
a period of years." Whitney Bros. Co,, No. 90-54-S (June 5,

1991), at 16-17.

-8-

determination.7 The written buy/sell contract provision

regarding payment expressly contemplates payment over ten years

at 10% interest. If plaintiffs prepay the note, they will avoid

paying the 10% interest and thereby deviate from an express

provision of the contract. Moreover, 10% interest over ten years

amounts to a significant percentage of the contract price. Since

prepayment would substantially alter the parties' financial

positions under the contract, an agreement to permit prepayment

constitutes an alteration under Article 5.

Furthermore, although the New Hampshire Supreme Court

has never encountered this precise issue, recent holdings from

that court support our conclusion. In DeCato Brothers, Inc. v.

Westinghouse Credit Corp., 529 A.2d 952, 956 (N.H. 1987), the

court stated, "generally, absent manifest injustice, an

instrument is payable in full according to its tenor, and the

maker has no right to prepay in the absence of an express

provision providing for prepayment." Later, in Patterson v.

Tirollo, 133 581 A.2d 74, 77 (N.H. 1990) (quoting Fuller

Enterprises v. Manchester Sav. Bank, 152 A.2d 179, 181 (N.H.

1959)), the court reaffirmed that "the law is clear in New

Hampshire that negotiable instruments are 'payable at the time

fixed therein,' and in the absence of an express provision that a

mortgagor is entitled to prepay his or her note, the mortgagor

has no legal rightto pay the debt inadvance of the maturitydate."

7 We note that our analysis would not change under a more
deferential standard of review as we find that the court clearly
erred in this determination.

-9-

Although these cases involve actual promissory notes,

rather than agreements to make promissory notes, by finding

prepayment precluded in the absence of a specific provision

authorizing it, the New Hampshire Supreme Court demonstrated a

belief that prepayment significantly alters the rights of the

parties involved.

Finally, plaintiffs' last-ditch argument, that

Sprafkin's February 3 letter constitutes a sufficient writing,

needs little deliberation.8 Sprafkin wrote the letter to

Barenholtz. Thus, it cannot be construed, as plaintiffs propose,

as a written offer which plaintiffs were entitled to accept

orally.

Because Article 5 of the contract precludes plaintiffs'

asserted oral agreement, the district court erred in finding the

note prepayable.9

II. INTEREST

Defendants next assign error to the district court's

8 Plaintiffs did not make this argument in response to
defendants' Article 5 argument. They made the argument as a
response to defendants' invocation of the statute of frauds.
However, we address the issue to alleviate any doubts that the
argument might have assisted them against the Article 5
prohibition.

9 Plaintiffs stress on appeal the district court's finding that
the parties formed the oral agreement after executing the written

contract, and they have not challenged this finding.
Additionally, they specifically argued to this court that "the
evidence Plaintiffs offered was to prove a subsequent agreement .

. ." (Plaintiffs-Appellees' Brief at 29). Thus, we need not
address defendants' alternative arguments that the oral agreement
could not bind them if it had been formed before or at the time
of the written contract.

-10-

determination that interest will not accrue until plaintiffs

execute the promissory note. They offer two principal arguments

to support this proposition.

First, defendants find their entitlement to prejudgment

interest in N.H. Rev. Stat. Ann. 524:1-b (1992). Under that

section, when a party wins pecuniary damages, he is entitled to

prejudgment interest on the award. Defendants argue that by

finding the stock's purchase price to be that advocated by

defendants, the court granted them pecuniary damages. Defendants

were not awarded pecuniary damages, however. Rather, plaintiffs

were awarded specific performance of the contract at the price

that the court found stipulated in their cross-motion for summary

judgment. In its second order, the district court reconsidered

its summary judgment ruling and determined that since plaintiffs

offered to pay defendants' advocated price at the time, the court

should have ordered the sale at that price. Thus, the court

granted plaintiffs' cross-motion for summary judgment to the

extent that it sought to compel defendants to sell the stock at

defendants' price. See Whitney Bros. Co., No. 90-054-S (Sept.

30, 1992), at 10-11. Indeed, the court specifically referred to

plaintiffs as "prevailing parties." Id. at 19.10 Thus,

524:1-b provides no basis for awarding defendants prejudgment

10 In light of the court's conclusion that the appraisal used to
calculate defendants' advocated price lacked factual foundation,
see Whitney Bros. Co., No. 90-054-S (Sept. 30, 1992), at 21, the

court's statement that "the price of the securities . . . is
$1,349,343" does not convince us that the court believed that to
be the price contemplated by the contract.

-11-

interest.11

Second, defendants argue that plaintiffs owe them

interest under the written contract, beginning November 3, 1989,

90 days after the death of Bernard Barenholtz. The theory is

that plaintiffs never made a valid tender within the required 90

days, and therefore defendants deserve the interest that accrued

from that date. See Lancaster Development Corp. v. Kattar, 262

A.2d 278, 280-81 (N.H. 1970) (where plaintiff was ready, willing

and able to perform, and defendant made faulty tender, plaintiff

was not responsible for interest accruing from the contracted

date of sale). Specifically, defendants claim that plaintiffs'

September 1989 tender was invalid because: (1) the note was

$170,000 less than the defendants' advocated purchase price; and

(2) the note contained a prepayment provision.

We cannot conclude that defendants are entitled to

interest under the agreement based on the September 1989 tender.

With respect to the purchase price, defendants failed to tell

plaintiffs their requested price within the prescribed ninety

days. Moreover, the district court specifically determined that

the appraisal on which their price was based was so lacking in

11 Defendants' assertion that the court's judgment which ordered
"prejudgment interest pursuant to NH RSA 524:1-b, if appropriate

. . . " (emphasis added) was a judgment for interest in their
favor that had to be appealed by plaintiff, lacks merit. As the
court's opinion did not indicate a belief that it was awarding
defendants damages by granting plaintiffs' cross-motion for
summary judgment, we cannot construe the court's reference to the
statute as an award of interest for defendants. Moreover, the
award specifically ordered prejudgment interest only if
appropriate. As we explained above, such interest would be
inappropriate here.

-12-

factual foundation that it should not have even been admitted at

trial. That plaintiffs later acquiesced to defendants' price in

order to end this disturbing litigation does not require a

finding that they were wrong to make their initial offer at the

time they made it.

Similarly, although we found that plaintiffs were not

entitled to prepay the note, we are not convinced that the

prepayment provision of the September 1989 tender rendered the

tender faulty at the time it was made. The record reveals no

evidence that defendants complained of the prepayment clause

before June 29, 1990, nine months after the tender. They cannot

now claim that the prepayment provision in the September 1989

tender stalled the sale. Cf. Elliott v. Dew, 212 S.E.2d 421

(S.C. 1975) (if defect in tender not objected to when tender is

made, cannot use defect to prevent performance of contract).

Moreover, defendants, consistently complained that

Whitney Brothers could not afford the purchase. (The district

court later found that the evidence amply supported a finding to

the contrary). Yet, at the same time, defendants demanded what

the district court found to be a trumped-up price. This suggests

that defendants were attempting to hamper the sale that the

contract required. Thus, even assuming plaintiffs' tender was

somehow faulty, as defendants were not willing to perform at the

time, they are not entitled to interest. Cf. Platsis v.

Diafokeris, 511 A.2d 535 (Md. App. 1986) (faulty tender does not

trigger accrual of interest if clear that only excessive amount

-13-

would be accepted).

Finally, as defendants were not entitled to interest

beginning November 3, their refusal to accept the December 1990

tender because it failed to include such interest precludes the

accrual of interest from that time. In addition, defendants'

parenthetical argument that the December 1990 tender was faulty

because it was conditional also fails. When the district court

determined that prepayment was prohibited, the tender became

unconditional. Yet, defendants still refused to accept it

without interest running from November 3. Again, defendants were

at no time willing to perform. Accordingly, we affirm the

district court's decision that interest should begin to accrue

when the note is executed.

III. ATTORNEYS' FEES

As defendants won their appeal with respect to

prepayment, plaintiffs are not entitled to attorneys' fees for

that issue. In addition, although defendants' arguments with

respect to interest were unconvincing, we do not find that they

went "against the overwhelming weight of precedent," that

defendants "could set forth no facts to support [their]

position," or that "there simply was no legitimate basis for

pursuing an appeal." See Kowalski v. Gagne, 914 F.2d 299, 309

(1st Cir. 1990). Accordingly, we deny plaintiffs' motion for

attorneys' fees.

Finally, plaintiffs request a finding that if we affirm

the district court's judgment, defendants may not appeal their

-14-

motion under Fed. R. Civ. P. 59(e) to alter the judgment with

respect to fees. Plaintiffs cite no cases that would justify

such a finding. Thus, we decline to make such a finding or

otherwise consider the issue of the award of attorneys' fees by

the district court.

Affirmed in part; reversed in part. Motion for

attorneys' fees in this court denied.

-15-